4

UNITED STATES, Appellee,

v.

James W. NEWCOMB, Specialist Four,
U. S. Army, Appellant.

No. 31,188.
SPCM 10434.

U. S. Court of Military Appeals.

May 1, 1978.

*Captain Leslie Wm. Adams,* argued the
cause for Appellant, Accused. With him on
the brief were *Colonel Alton H. Harvey,
Lieutenant Colonel James Kucera, Captain
John C. Carr,* and *Captain John Richards
Lee.*

*Captain Laurence M. Huffman,* argued
the cause for Appellee, United States.
With him on the brief were *Lieutenant
Colonel Donald W. Hansen, Major John T.
Sherwood, Jr.* and *Captain Gary F. Thorne.*

Opinion of the Court

PERRY, Judge:

The appellant was convicted by a special
court-martial of two specifications of larce-
ny and two specifications of housebreaking,
in violation of Articles 121 and 130, Uni-
form Code of Military Justice, 10 U.S.C.
§§ 921 and 930, respectively. He was sen-
tenced to a bad-conduct discharge, confine-
ment for 5 months, forfeiture of $215 pay
per month for 5 months and reduction to
the lowest enlisted grade. The convening
authority approved the sentence but sus-
pended execution of the punitive discharge
for 6 months and provided for automatic
remission. The United States Army Court
of Military Review affirmed without opin-
ion. We granted review to consider the

appellant's contention that the court-martial which tried and convicted him was without jurisdiction because the convening authority failed to personally detail the trial judge and counsel for the court-martial. For the reasons hereinafter stated, we conclude that jurisdictional error exists. Therefore we reverse.

Under the procedure here challenged, the convening authority delegated to the staff judge advocate the authority to amend a convening order (containing the names of members which the convening authority had personally detailed) to include counsel and a trial judge when their identities for a specific case were ascertained. Although the convening authority was generally aware of the counsel who represented the parties in various special courts-martial, and was familiar with the trial judges stationed within his command who had been designated as such by the Judge Advocate General of the Army, the convening authority did not personally detail counsel or judge to any specific case. Assignment of the judge to the specific case was left to the judiciary.

The procedure came to light when, during the trial, the military judge observed that his copy of the convening order which detailed a new military judge and both counsel to the trial had not been signed. However, upon inquiry, he discovered that the original of the order was signed. Captain Charles Zimmerman, Deputy Staff Judge Advocate and Acting Assistant Adjutant General was called as a witness for the court to clarify the circumstances surrounding the signing of the appointing order. Captain Zimmerman testified that as an acting assistant adjutant general he signed, on behalf of the convening authority, the convening order in this case and that he had signed the order after the trial had commenced, just prior to the beginning of his testimony. He also described the procedures which were generally utilized by his office and which were followed in this case.[1] His testimony reveals that the convening authority did not personally detail the judge or counsel to this or other courts-martial.

Responding to the appellant's contention that the court-martial lacked jurisdiction, the government argues that the matter of detailing judges and counsel under the pro-

---

1. Captain Zimmerman's testimony concerning the procedure utilized here was as follows:

   "Q: What in fact was done?

   A: Well, in this office and in any other Judge Advocate's office I've been in, the appointment of counsel is a matter delegated to the Staff Judge Advocate by the convening authority, unless there is a question of the availability of counsel, of course, where a man's being denied. In this instance, any cases which arise out of the particular jurisdiction—special court convening authority jurisdiction in this case—Captain Newton is always the detailed defense counsel for those cases. And the same way upon notification, for example, from your office, Your Honor, that you are going to be the judge, you would be detailed on the orders as the military judge. And the same way with the defense counsel. When we discover who is representing—actually representing the man and request him as detailed defense counsel, the defense counsel is automatically detailed to the court. It's a matter of standard practice within the office. If I may explain how it occurs?

   Q: Yes.

   A: All cases that are referred by the general are referred to the most current existing—in this case, I believe, BCD court, with members, military judge, trial and defense counsel, as is required. When we get within a reasonable time prior to trial and we discover who the military judge is—as you know they change quite frequently and who the defense counsel is—we normally know who the trial counsel will be but sometimes there may be a change—an order is cut and normally signed by me or by another member of the office who is also an Acting Assistant Adjutant indicating that the proper counsel and military judge are detailed to the court. And this is a matter of standard practice within the office. And that is what happened in this case. (R. 81–83).

visions of Article 26 [2] and 27 [3] respectively of the UCMJ [4] is ministerial in nature and that performance thereof may be delegated. The government further suggests that these statutes [5] only require an "official appointment" rather than a "personal selection." In contrast, the Government points to Article 25, [6] UCMJ, 10 U.S.C. § 825, which tasks the convening authority with detailing court members who, "in his opinion are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." Thus, in the Government's view, unlike Article 25, Articles 26 and 27 do not require the exercise of discretion. We, therefore, are urged to sanction the appointment process employed here as a proper delegation of purely administrative authority. We are satisfied that the government's approach is not consistent with the intent of Congress.

We observe that the language of both Articles 26 and 27, UCMJ, is prescriptive. Article 26 provides that the convening authority "shall . . . detail a military judge." [7] Article 27 provides that the convening authority "shall detail trial counsel and defense counsel." On its face, the language in both these Articles appears plain and unambiguous and "does not by its terms permit delegation of this responsibility." *United States v. Bingham*, 3 M.J. 119, 123 (C.M.A.1977). On the other hand, we recognize that the language of Article 25,

which states that "the convening authority shall detail . . . such members of the armed forces as, in his opinion, are best qualified," is more explicit than that of the other two articles. Indeed, the Government even concedes that the convening authority's responsibility under Article 25 is not delegable. When considered in conjunction with the language of Article 25, the language of Articles 26 and 27 assumes an aura of ambiguity. However, we are not satisfied that this difference is a sufficient indicia of an intent to permit delegation. If Congress had intended to permit the convening authority to delegate any or all of the powers of detailing court-martial personnel, it could easily have said so, as it frequently did elsewhere in the Code when permitting an official to delegate powers given him by the Congress. *See United States v. Cunningham*, 21 U.S.C.M.A. 144, 145, 44 C.M.R. 198, 199 (1971); *United States v. Greenwell*, 19 U.S.C.M.A. 460, 463, 42 C.M.R. 62, 65 (1970). What we said in *United States v. Butts*, 7 U.S.C.M.A. 472, 474–5, 22 C.M.R. 262, 264–5 (1957), is particularly apposite here:

The grant of the powers in issue is contained in the Uniform Code. Turning to its provisions, we find that whenever Congress conferred a power upon a particular authority in the court-martial system and intended that authority to give others the right to exercise the power, it

**2.** Article 26, Uniform Code of Military Justice, 10 U.S.C. § 826 provides:

(a) The authority convening a general court-martial shall, and, subject to regulations of the Secretary concerned, the authority convening a special court-martial may, detail a military judge thereto. . . .

While Article 26(a) makes it discretionary with the service secretary whether a trial judge will be detailed to a special court-martial, operation of Article 19 of the Code, 10 U.S.C. § 819 *requires* the detailing of a military judge if a special court-martial is to have authority to adjudge a bad-conduct discharge as a part of the sentence, as in the present case. For this class of special courts-martial, then, the prescriptive word "shall" in Article 26(a) applies with equal force as it does to general courts-martial.

**3.** Article 27, UCMJ, 10 U.S.C. § 827, provides, *inter alia*:

(a) For each general and special court-martial the authority convening the court shall detail trial counsel and defense counsel, and such assistants as he considers appropriate.

. . .

**4.** 10 U.S.C. §§ 826, 827.

**5.** *Id.*

**6.** Article 25(d), UCMJ, 10 U.S.C. § 825(d) provides, in relevant part:

(2) When convening a court-martial, the convening authority shall detail as members thereof such members of the armed forces as, in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament. . . .

**7.** *See* footnote 2.

expressly provided for such designation. Articles 9(a), 22(a)(6)(7), 23(a)(7), 24(a)(4), 71(b), 74(a), 135 and 140. See also *United States v. Roberts*, 7 U.S.C.M.A. 322, 326, 22 C.M.R. 112; *United States v. Schuller*, 5 U.S.C.M.A. 101, 104, 17 C.M.R. 101. Speaking of a similar situation in *United States v. Simmons*, 2 U.S.C.M.A. 105, 107, 6 C.M.R. 105, we said: "This singling out of specific officials for the exercise of the power is itself a weighty argument that Congress intended to limit the power to those designated."

Added to the careful enumeration by Congress is the fact that established administrative practice contemplates the personal exercise of the powers by the convening authority when he reviews the record of trial. . . . In view of the long-standing nature of this practice, we can assume that it was known to and also acquiesced in by Congress when it enacted the Uniform Code. *United States v. South Buffalo Ry. Co.*, 333 U.S. 771, 774–5, 68 S.Ct. 868, 92 L.Ed. 1077. Since the Congress did not specifically provide for delegation of the duties therein included, we conclude that Articles 26 and 27 direct that only the convening authority may perform the tasks of detailing judges and counsel.[8]

▉ Proper designation of the military judge is crucial to the composition of the court-martial. *United States v. Singleton*, 21 U.S.C.M.A. 432, 45 C.M.R. 206 (1972); *Wright v. United States*, 2 M.J. 9 (C.M.A. 1976). A failure by the convening authority to properly detail the judge is fatal to court-martial jurisdiction. We hold, therefore, that the purported delegation of power from the convening authority to a subordinate officer to detail the military judge and counsel to the appellant's court-martial was ineffectual for that purpose as it was contrary to the intent of Congress embodied in Articles 26 and 27, UCMJ. Resultantly, the failure to have a properly detailed trial judge presiding over that court-martial rendered that body jurisdictionally defective. *Wright v. United States, supra; United States v. Singelton, supra.*

The decision of the United States Army Court of Military Review is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A new trial may be held.

COOK, Judge (concurring):

I agree with Judge Perry, but as he does not meet the issues tendered in Chief Judge Fletcher's dissent, I am constrained to do so because they are important to military practice.

Chief Judge Fletcher's pronouncement that the President's rule-making authority is confined "to matters of trial procedure" and that he has no power in regard to the "procedural steps necessary to bring a case to trial" is contrary to 200 years of American military practice. It not only wipes out the rules prescribed by the President in the Manual for Courts-Martial, United States, 1969 (Revised edition), for pretrial proceedings, but also vitiates those provided for post-conviction proceedings.

Congress has the constitutional power to govern the armed forces. U.S.Const. art. I, § 8. The President, by the Constitution, is the nation's Commander-in-Chief. When Congress defines military crimes and provides for their prosecution by courts-martial, but does not particularize all procedures necessary to achieve its purposes, the President, or his subordinates in the military departments, must formulate the rules. Long before Congress legislated as to procedure in any significant way, service regulations established the rules. Those regulations were expressly approved by the Unit-

---

8. While we now hold that the convening authority must *personally detail* court-martial personnel under Articles 26 and 27, we find no impediment to his receiving staff *assistance* in the *selection* of those personnel, just as we found no barrier to such aid in the selection of court members under Article 25 in *United States v. Kemp*, 22 U.S.C.M.A. 152, 46 C.M.R. 152 (1973). The fact remains, if the convening authority personally must detail the personnel, then it is *his* decision, regardless of who played what role in helping him make that decision, and that is what we believe Congress intended by these provisions.

ed States Supreme Court as having "the force of law." *Swaim v. United States*, 165 U.S. 553, 565, 17 S.Ct. 448, 41 L.Ed. 823 (1897); *Ex Parte Reed*, 100 U.S. 13, 25 L.Ed. 538 (1879).

Article 67(g) of the Uniform Code of Military Justice, 10 U.S.C. § 867(g), requires the judges of this Court, the Judge Advocates General of the armed services, and the General Counsel of the Department of Transportation, as representative of the Coast Guard, to report annually to the Committees on Armed Services of the United States Senate and House of Representatives on "matters considered appropriate" to the operation of the Code. Twenty-four such reports have been made and filed. Never has a judge of this Court, or any of the other participants in the reports, suggested that the President has exceeded the authority conferred upon him in Article 36, 10 U.S.C. § 836 by promulgating appropriate rules for pretrial and post-conviction proceedings. Such a suggestion would have been contrary to the universal understanding that Article 36 confirmed the President's power to prescribe rules for all courts-martial processes, not just those relating to the trial.

In the quarter century of its existence, this Court has dealt with many of the pretrial and post-trial rules promulgated in the Manual for Courts-Martial. On every occasion that the rule was determined to be consistent with the Constitution and the Uniform Code, it was acknowledged to have the "force of law." Until recently, this Court has consistently and uniformly recognized the legal force of the Manual provisions in those areas. The list of cases is long, but I need not burden this separate opinion with enumeration. Suffice it to refer to one case in each area.

In *United States v. Nix*, 15 U.S.C.M.A. 578, 581, 36 C.M.R. 76, 79 (1965), the Court held that, under the Manual, "pretrial motions are properly addressed to the convening authority" and his determination "must be complied with . . . before proceeding with the trial." In *United States v. Dow*, 1 M.J. 250 (C.M.A.1976), the Court

unanimously reaffirmed *United States v. Keller*, 1 M.J. 159 (C.M.A.1975), in which the Court held that a Manual rule, not commanded by any provision of the Code, which required the convening authority to set out his reasons for not following the recommendations of the staff judge advocate in post-trial advice, was binding upon the convening authority, and his failure to comply with that rule was reversible error.

Turning to the merits of the issue upon which we granted review, I believe the Chief Judge is attempting to reshape the Code in his own image.

Article 25(d)(2), UCMJ, 10 U.S.C. § 825(d)(2), provides that "the convening authority shall detail" the members of the court-martial; Article 26 directs that "[t]he authority convening a . . . court-martial shall . . . detail a military judge thereto"; and Article 27(a) provides that "the authority convening the court shall detail trial counsel and defense counsel, and such assistants as he considers appropriate." Thus, the language of the Uniform Code requires the convening authority personally to detail the court members, but it is said that, while the language is the same, when applied to the trial judge and to counsel, a different meaning and a different consequence are required.

The dissent maintains that the convening authority has so little choice as to the qualifications of the judge and counsel, in contrast to his discretion as regards the court members, that his selection of the legal personnel is purely ministerial and, therefore, delegable. The Military Justice Act of 1968, P.L. 90-632, 82 Stat. 1335, enlarged the functions of the judge and the occasions for appointment of legally-trained counsel, but it was not "an overall revision of the court-martial system"; it merely effected "a few changes" calculated "to improve some of the procedures and increase the substantive safeguards in courts-martial." S.Rep.No. 1601, 90th Cong., 2nd Sess., 3 United States Code Cong. & Admin.News, p. 4503 (1968). The Act did not change the qualifications of the military judge from those specified for his predecessor, the law

officer, under the Code as originally enacted in 1950. Moreover, the qualifications are also the same as those prescribed for the law member of the court-martial in the 1948 amendments to the Articles of War of 1920. Article of War 8, Act of June 24, 1948, 62 Stat. 604, 628–29. Similarly, the qualifications of counsel for a general and special court-martial were unchanged. As the qualifications for both the trial judge and counsel are not new, I discern no justification for attributing to them a significance different from what they had under the earlier legislation.

Predecessor legislation on the composition of a court-martial has been consistently construed by those charged with administering the system as requiring the convening authority personally to select all persons detailed to a court. Naval Courts and Boards, 1937, notes that the precept, the order convening the court-martial (§ 345) and designating the members and the judge advocate, who was to be "skilled in the law" (§§ 329, 330), was to be "signed by the convening authority" (§ 345). In the same vein, Colonel Winthrop observed, in his authoritative work on Army practice, that the judge advocate of a court-martial is appointed by "the commander who . . . convenes the court-martial," and this "authority to detail the judge advocate cannot be delegated to or assumed by an inferior or other commander." Wintrop's Military Law and Precedents, 2d ed., 1920 Reprint at 182, Section 3.[1]

As far as I have been able to ascertain, at the time Congress considered the Military Justice Act of 1968, no voice was raised against the long-established and uniform rule of nondelegability of the power to detail persons to courts-martial. The Act codified the concept of the field judiciary,

which had been pioneered by the Army in 1958 and was adopted later by the other services, by providing that "[t]he military judge of a general court-martial shall be designated by the Judge Advocate General, or his designee," but the detail itself was still the responsibility of the convening authority. Article 26(c), UCMJ, 10 U.S.C. § 826(c). Consequently, if any congressional intention can be gleaned from the provisions dealing with the qualifications of the trial judge and counsel, and the Judge Advocate General's designation of the judge for a general court-martial, it is, in my opinion, that Congress did not want to change the nondelegable nature of the convening authority's power to detail to a court persons having such qualifications. See United States v. Kirsch, 15 U.S.C.M.A. 84, 94, 35 C.M.R. 56, 66 (1964).

This Court has condemned, as unauthorized by the Code and the 1968 Act, the detail by a commander of two military judges to the same court-martial, under an arrangement which contemplated that one or the other of the two would sit, as administrative convenience dictated. The Court noted that "designation of the membership of courts-martial is too important to be controlled by administrative convenience." United States v. Sayers, 20 U.S.C.M.A. 462, 466, 43 C.M.R. 302, 306 (1971). As the Court was assuredly aware of the difference in qualifications between a court member and a military judge, I have no doubt the Court intended the word "membership" to include not only the members of the court-martial, but other personnel detailed to it, especially the military judge whose presence is required to constitute the court. See United States v. Wright, 2 M.J. 9 (C.M.A.1976).[2] Sayers impliedly recognized the

---

1. The Manual for Courts-Martial, U.S. Army, 1917, paragraph 18, provided that "the authority to appoint general courts-martial is an attribute of *command*," and the commander "can not delegate to another officer such as his adjutant or any other staff officer . . . the authority to appoint a court." Then Article of War 11, Act of June 24, 1948, 62 Stat. 604, 629, required appointment of a judge advocate for every general or special court-martial by "the

authority appointing the court." Successor manuals contained similar comments on the nondelegability of the power to detail personnel to court-martial duty. Manual for Courts-Martial, U.S. Army, 1928, paragraph 5a; Manual for Courts-Martial, U.S. Army, 1949 paragraph 5; Manual for Courts-Martial, United States, 1951, paragraph 5a (5).

2. It should be noted that the question as to the "membership of courts-martial" in the present

nondelegable character of the selection process as to all persons detailed to a court-martial; and its implication was made explicit in *United States v. Singleton*, 21 U.S. C.M.A. 432, 45 C.M.R. 206 (1972). There, the Court was confronted with a situation in which the detail of the military judge and counsel was not apparent on the record. The Court overturned the conviction, with the following pertinent comments:

> We are constrained, however, to hold that this record is silent with regard to the contents of the oral appointment, when it was made or by whom. In sum, it is impossible to determine that the convening authority, or one acting as such in his absence, made the appropriate appointments as he is required to do so [sic] by both the Code and the Manual.

*Id.* at 434, 45 C.M.R. at 208.

In summary, the language of the statutory provisions on the detail of persons to a court-martial, the consistent construction accorded that language in the successive service manuals promulgating the rules of practice to administer the statutes, and the decisions of this Court are all opposed to a conclusion that the convening authority's power to detail the trial judge and counsel to a court-martial can properly be delegated to others. The current practice of designation of the military judge of a general court-martial by the Judge Advocate General may suggest that the rule should be changed, but the change must be made by Congress, not judicial decree.

FLETCHER, Chief Judge (dissenting):

I must disagree with my brother judges for the reasons to be stated.

Appellant seeks reversal of his special court-martial conviction, contending that *the convening authority's failure personally to select the trial judge and counsel for the proceedings was jurisdictionally fatal.*

---

case is not what persons must be detailed to the court to enable it to function as a court-martial, that is, whether the court is complete in a jurisdictional sense, which was the issue in *United States v. Wright*, 2 M.J. 9 (C.M.A.1976), but rather is the ancillary question of who can,

In the challenged referral procedure the staff judge advocate was delegated the authority to amend, on behalf of the convening authority, an initial convening order (in which the convening authority personally had appointed court members) to include counsel and a trial judge when they later were ascertained. Although the convening authority was generally aware of the counsel who represented the parties in his various special court-martial jurisdictions and of the trial judges stationed in his command, he did not personally select counsel or judge to act in a given case. Rather, he left that choice to the judiciary.

Government counsel have sought to narrow the issue to whether the detailing of counsel and judge is a nondelegable judicial function or a ministerial act which may be delegated. The pertinent statutes are Article 26 of the Uniform Code, which specifies that, "subject to regulations of the Secretary concerned, the authority convening a special court-martial may, detail a military judge thereto," and Article 27 of the Uniform Code, which directs the convening authority to "detail trial counsel and defense counsel" for general and special courts-martial.

The Government suggests that these statutes merely require an "official appointment" rather than a "personal selection." For comparison, government counsel point to Article 25(d)(2), Uniform Code of Military Justice, which tasks the convening authority with detailing court members who, "in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." Unlike the detailing of court members, the provisions of Articles 26 and 27 require no exercise of personal discretion, in the Government's view. Thus, it is urged that we sanction the appointment process employed here as a proper delegation of purely administrative authority.

---

under the Uniform Code, detail persons who have duties incident to a court-martial, regardless of whether a particular person is or is not essential to the composition of the court-martial in a jurisdictional sense.

Challenging this view, appellant points to paragraph 6a, Manual for Courts-Martial, United States, 1969 (Revised edition), which, in pertinent part, states: "The power to detail [counsel] under Article 27 cannot be delegated." In addition, appellate defense counsel have called our attention to chapter 12, Army Regulation 27–10, (change 3, Aug. 1, 1969), which provides, in paragraph 12–2, "As soon as practicable after the convening authority has personally determined the composition of a court-martial, he will issue convening orders . . ." This regulation also specifies that "[t]he authority line in convening orders indicates that the commander has personally acted with respect to the selection of the personnel named in the order." Paragraph 12–4c(1). Appellant also relies upon *United States v. Singleton*, 21 U.S.C.M.A. 432, 45 C.M.R. 206 (1972), in which we held that a court-martial lacked jurisdiction where the convening authority failed to detail counsel and a military judge prior to commencement of the trial proceedings.[1]

*Singleton* is inapposite at this juncture since it dealt with the total failure to appoint counsel or a judge for the proceedings. The threshold question here is whether counsel and the trial judge properly were appointed pursuant to a delegation of authority. *Singleton* becomes pertinent only if it is concluded that the delegation procedure employed was improper. Because, under *United States v. Wright*, 2 M.J. 9 (C.M.A.1976), defects in the appointment of counsel are not jurisdictionally significant, whereas similar defects in the appointment of a trial judge are, and because the implementing language of Article 26 (appointment of trial judges) differs somewhat from that of Article 27 (appointment of counsel), the delegation of authority question is best resolved separately for counsel and the trial judge.

Pertinent to both delegation issues, however, is my belief that neither Article 26 nor Article 27 contemplates a judicial act in selecting these participants for courts-martial. Ordinarily, only if an act "requires the exercise of a judicial judgment" is it nondelegable. *United States v. Bunting*, 4 U.S.C.M.A. 84, 87, 15 C.M.R. 84, 87 (1954); *United States v. Greenwalt*, 6 U.S.C.M.A. 569, 573, 20 C.M.R. 285, 289 (1955). *See also United States v. Brady*, 8 U.S.C.M.A. 456, 460, 24 C.M.R. 266, 270 (1957). The requisite qualifications for both judges and counsel are set forth expressly in the Uniform Code. *See* Articles 26(b) and 27(b), UCMJ. Unlike the present military jury selection process, these statutes leave to the convening authority no discretion insofar as which counsel or judges are "best qualified." In fact, the convening authority has no choice with regard to the severely limited options insofar as special court-martial judges are concerned and the designation of a military judge for a general court-martial. *Compare* Article 19, *with* Article 26(c), UCMJ and paragraph 9–8, AR 27–10, *supra*. His alternatives with regard to the appointment of counsel also are restricted as a result of preformed attorney-client relationships[2]

---

1. *United States v. Singleton*, 21 U.S.C.M.A. 432, 45 C.M.R. 206 (1972), was partially overruled by our decision in *United States v. Wright*, 2 M.J. 9 (C.M.A.1976).

2. DR 2–110, American Bar Association Code of Professional Responsibility provides:
    (A) In general.
    (1) If permission for withdrawal from employment is required by the rules of a tribunal, a lawyer shall not withdraw from employment in a proceeding before that tribunal without its permission.
    (2) In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employ-

ment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules.
    (3) A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.
    (B) Mandatory withdrawal.
    A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:
    (1) He knows or it is obvious that his client is bringing the legal action, conducting the defense, or asserting a position in the litigation, or is otherwise having steps taken for

and predesignated legal responsibilities to particular counsel in a given command.

These considerations lead me to conclude that there is nothing inherently judicial about the selection of counsel or trial judges for courts-martial proceedings. The process is, as the Government suggests, essentially "ministerial, requiring no exercise of discretion." *United States v. Johnson*, 10 U.S.C.M.A. 630, 633, 28 C.M.R. 196, 199 (1959). *See also United States v. Moschella*, 20 U.S.C.M.A. 543, 546, 43 C.M.R. 383, 386 (1971). Ordinarily, such a conclusion would end the matter and would dictate that the delegation of purely administrative authority is permissible.

However, the promulgation of a contrary scheme in the Manual for Courts-Martial, requiring the convening authority personally to appoint counsel, as well as the existence of an Army Regulation directing the personal appointment of judges, counsel, and court members by the convening authority, necessitates a further inquiry to resolve the impact of these directives on the court-martial convening process.[3]

### A

Turning first to whether the delegation of authority to appoint counsel was permissible in this instance, I am confronted with the previously quoted Manual provision (paragraph 6a) which bars a delegation of such authority, and the prohibition found in paragraphs 12–2 and 12–4c(1) of AR 27–10.

In order for presidential or service directives to have jurisdictional impact upon the administration of military justice, they must be promulgated pursuant to a congressional delegation of authority, consistent with the Constitution. "In the framework of our Constitution, the President's power to see that the laws are faithfully

---

him, merely for the purpose of harassing or maliciously injuring any person.
(2) He knows or it is obvious that his continued employment will result in violation of a Disciplinary Rule.
(3) His mental or physical condition renders it unreasonably difficult for him to carry out the employment effectively.
(4) He is discharged by his client.
(C) Permissive withdrawal.
If DR 2–110(B) is not applicable, a lawyer may not request permission to withdraw in matters pending before a tribunal, and may not withdraw in other matters, unless such request or such withdrawal is because:
(1) His client:
(a) Insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or referral of existing law.
(b) Personally seeks to pursue an illegal course of conduct.
(c) Insists that the lawyer pursue a course of conduct that is illegal or that is prohibited under the Disciplinary Rules.
(d) By other conduct renders it unreasonably difficult for the lawyer to carry out his employment effectively.
(e) Insists, in a matter not pending before a tribunal, that the lawyer engage in conduct that is contrary to the judgment and advice of the lawyer but not prohibited under the Disciplinary Rules.
(f) Deliberately disregards an agreement or obligation to the lawyer as to expenses or fees.

(2) His continued employment is likely to result in a violation of a Disciplinary Rule.
(3) His inability to work with co-counsel indicates that the best interests of the client likely will be served by withdrawal.
(4) His mental or physical condition renders it difficult for him to carry out the employment effectively.
(5) His client knowingly and freely assents to termination of his employment.
(6) He believes in good faith, in a proceeding pending before a tribunal, that the tribunal will find the existence of other good cause for withdrawal.

3. This case highlights the pressing need for Congressional action to create military tribunals at the trial level with continuing jurisdiction. The overly technical and outmoded convening order process serves no useful purpose. Instead, it causes substantial expense and delay in the administration of. military justice while perpetuating a needless jurisdictional thicket for counsel and judges both at the trial and appellate court levels. This case also illustrates that certain provisions of the Manual as well as service directives have made the convening of courts-martial even more complex than is statutorily mandated. To thrust upon military commanders the needless task of handpicking counsel and judges when such action is not statutorily mandated strikes me as a waste of extremely valuable military talent which could better concentrate on more substantive matters.

executed refutes the idea that he is to be a lawmaker. The Constitution limits his functions in the lawmaking process to the recommending of laws he thinks wise and the vetoing of laws he thinks bad." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587, 72 S.Ct. 863, 867, 96 L.Ed. 1153 (1952).

Article 1, § 1 of the United States Constitution vests legislative power in the Congress. "The essentials of that function are the determination by Congress of the legislative policy and its approval of a rule of conduct to carry that policy into execution." *Hirabayashi v. United States*, 320 U.S. 81, 104, 63 S.Ct. 1375, 1387, 87 L.Ed. 1774 (1943). However, "[t]he Constitution has never been regarded as denying to the Congress the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the Legislature is to apply." *Panama Refining Co. v. Ryan*, 293 U.S. 388, 421, 55 S.Ct. 241, 248, 79 L.Ed. 446 (1935); *accord, Currin v. Wallace*, 306 U.S. 1, 15, 59 S.Ct. 379, 83 L.Ed. 441 (1939).

In this vein, Congress has delegated to the President authority to prescribe rules of "procedure, including modes of proof, in cases before courts-martial . . . which shall, so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with this chapter." Article 36(a), UCMJ. The language of Article 36 confines the President's rule-making authority thereunder to matters of trial procedure. *See United States v. Ware*, 1 M.J. 282, 285 n.10 (C.M.A.1976) *cf. United States v. Douglas*, 1 M.J. 354 (C.M.A.1976).

The procedural steps necessary to bring a case to trial already are enunciated in the Uniform Code of Military Justice, and Article 36 evidences no intention by the Congress to dilute its legislative judgment concerning pretrial procedures by authorizing the promulgation of executive restrictions which undercut the congressional scheme. The Manual cannot "bootstrap itself into an area in which it has no jurisdiction by repeatedly [exceeding] its statutory mandate." *Federal Maritime Commission v. Seatrain Lines, Inc.*, 411 U.S. 726, 745, 93 S.Ct. 1773, 1785, 36 L.Ed.2d 620 (1973). Nor does the lapse of time, under our constitutional scheme, transform executive action into a binding legislative pronouncement. Further, the fact that this Court previously has not had occasion to reject a Manual provision for exceeding the scope of the President's authority, even though not necessarily inconsistent with the Uniform Code, does not signify judicial sanction of all that appears in the Manual for Courts-Martial.

As paragraph 6a, Manual, *supra*, requiring the personal designation of counsel, does not fall within the scope of the Article 36 delegation of authority to the President, its significance necessarily is limited to expressing the executive's view of the appropriate interpretation this Court should place on Article 27. The same holds true for AR 27–10 insofar as it purports to bar a delegation of authority to appoint counsel.

The construction given the statute by those officials charged with administering the military justice system is entitled to considerable deference. *See Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *Morton v. Ruiz*, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); *NLRB v. Hearst Publications, Inc.*, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944). Nevertheless, I do not believe this Court is "obliged to stand aside and rubber-stamp [its] affirmance of [executive] decisions that [it deems] inconsistent with [the] statutory mandate or that frustrate the congressional policy underlying [the] statute. *NLRB v. Brown*, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965); *Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission*, 390 U.S. 261, 272, 88 S.Ct. 929, 19 L.Ed.2d 1090 (1968); *accord, Federal Maritime Commission v. Seatrain Lines, supra*, 411 U.S. at 746, 93 S.Ct. 1773.

As earlier observed, the doctrine of delegability is a well-settled legal precept of which the Congress undoubtedly was aware in its consideration of the Uniform Code of Military Justice. Where judicial or discretionary action is not involved, delegability is beneficial to the extent that it hastens the trial process and reduces the cost of administering the military justice system by encouraging decisionmaking at lower echelons. The absence of personal selection criteria in Article 27, in contrast with the presence of such criteria in Article 25, coupled with specified qualifications for detailed counsel in Article 27(b), signifies a legislative judgment that the detailing of counsel need not be a personal selection by the convening authority so long as counsel are officially appointed by order of the convening authority in accordance with Article 27. As such, the executive branch's interpretations of Article 27 frustrate the policy of delegability implicit within the statute. *Cf. Greene v. McElroy,* 360 U.S. 474, 506, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). Thus, I conclude that the convening authority properly delegated his authority to appoint counsel for the instant court-martial pursuant to Article 27(a), UCMJ.

### B

It could perhaps be argued that the convening authority's delegation of authority to appoint a trial judge for appellant's special court-martial must be resolved somewhat differently as a result of the language of Article 26(a), UCMJ, which gives a commander convening a special court-martial authority to detail a military judge "subject

to regulations of the Secretary concerned."[4] Although AR 27–10, promulgated by the Secretary of the Army, does specify that the trial judge must be personally selected by the convening authority, I construe the condition of Article 26(a) that exercise of the power is "subject to regulations of the Secretary" as intended by Congress only to govern the occasions when a trial judge may be detailed to a special court-martial rather than *who* that judge must be. The Senate Report on the provision, which was part of the Military Justice Act of 1968, notes that it was "designed primarily for the trial of cases involving factual and legal problems which might be considered too difficult for a legally untrained special court-martial president to handle." S.Rep. 1601, 90th Cong., 2d Sess., 3 U.S.Code Cong. & Admin.News, p. 4505 (1968); 114 Cong.Rec. 29397–9, 30564–5 (1968). At least insofar as special courts-martial in which a bad-conduct discharge is imposed (such as this case) are concerned, the detailing of a trial judge to preside over the hearing is mandatory. Article 19, UCMJ. Hence, the actual selection of the judge is reduced to the question of who the judge shall be, which, for the reasons set forth in Section A of this opinion, I conclude is a purely ministerial act subject to delegation. The regulation's attempt to remove that power from the convening authority is inoperative as being in contravention of the policy of delegability implicit within Article 26.

I would affirm the United States Army Court of Military Review.

---

4. I perceive no similar regulatory hurdle insofar as a delegation of authority to appoint general court-martial judges is concerned. Under Article 26(a), Uniform Code of Military Justice, the service secretaries have no authority to promulgate regulations specifying the method of appointment of general court-martial judges. To the extent that AR 27–10 purports to direct personal appointment of general court-martial judges, I view it as inoperative under the reasoning set forth in Section A of this opinion.