UNITED STATES, Appellee,

v.

Private (E–2) Reginald D. LIVINGSTON, SSN 241–94–2179, United States Army, Appellant.

SPCM 13552.

U. S. Army Court of Military Review.

19 April 1979.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, Captain Larry D. Anderson, JAGC, and Captain Allan T. Downen, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, Major David McNeill, Jr., JAGC, and Captain Paul W. Jacobson, JAGC, were on the pleadings for appellee.

Before FULTON, TALIAFERRO and WATKINS, Appellate Military Judges.

## OPINION OF THE COURT

TALIAFERRO, Judge:

Appellant was convicted, in a trial by special court-martial consisting of a military judge and four officer members, of six specifications alleging violation of general regulations by purchasing controlled items in excess of the regulatory monthly limit. His sentence to a bad-conduct discharge, and reduction to pay grade E–1 was approved by the convening authority. Assigned errors are discussed herein seriatim.

I

A defense motion to suppress Prosecution Exhibits 2–7 (165 transaction cards) on grounds that the cards (records of controlled purchases) were made principally with a view toward prosecution, was denied by the military judge. Appellant now further contends the records were not admissible either as official records or as business entries. The military judge admitted the

records as business entries, and we agree. The records were kept in the ordinary course of business—that being the business of operating a military exchange under the "controlled purchase" system. (R. 24). The witness, Commander Caruso, was ". . . intimately familiar with the conduct of the [exchange] operation . . .." *United States v. Wilson*, 1 M.J. 325 (C.M.A.1976). We are convinced that these records, made at the time of each purchase, whether or not in any given case overpurchase might have been suspected, were not made "principally for the purpose of prosecution." *See United States v. Evans*, 21 U.S.C.M.A. 579, 45 C.M.R. 353 (1972).

## II

■ Appellant contends Prosecution Exhibit I, a compilation of the pertinent data from throughout the many entries on the voluminous transaction cards which comprise Prosecution Exhibits 2–7, was erroneously admitted, principally because the witness, Commander Caruso, did not ". . . [examine] and [summarize] the whole collection . . ." personally or as a member of a group of qualified persons, as provided in paragraph 143a (2)(b), Manual for Courts-Martial, United States, 1969 (Revised edition). Commander Caruso testified that he had reviewed the summary after it had been prepared ". . . courtesy of the Law Center . . ." but also testified that he had prepared the cards, and that he ". . . went by each card to make sure that amount was on that (the summary) at the time. . . ." We hold this action constitutes compliance with the provisions of paragraph 143a (2)(b) *supra*. The military judge admitted the summary as "an aid to the court" with precautionary instructions to the effect that only the source documents were to be considered evidence. *Compare United States v. Smyth*, 556 F.2d 1179, 1183 (5th Cir. 1977). Admission of the summary into evidence was proper.

## III

■ By his third assignment of error, appellant presents an anomaly. While he alleges error in that the convening authority did not personally select the military judge, he contends, at the same time, that the convening authority "will not detail Captain Kaplan to any ration control cases," (R. 5) and that he relieved Captain Kaplan, detailing Colonel Hammack instead (R. 6) "for the trial of [the instant case] only."[1] Aside from that inconsistency, we find, as we did in *Saunders*[2] that "The Government affirmatively established on the record the court's jurisdiction when it announced without challenge by the defense the convening of the court and the referral to trial of charges by the appropriate authority." We find no affirmative evidence in the record to overcome the presumption of regularity. *United States v. Saunders, supra; United States v. Masusock*, 1 U.S.C.M.A. 32, 1 C.M.R. 32 (1951).

## IV

■ Contending that the court lacked jurisdiction for failure of the convening authority to sign Court-Martial Convening Order Number 19 before completion of the trial proceedings, appellant cites *United States v. Ware*, 5 M.J. 24 (C.M.A.1978). The facts in the instant case are clearly distinguishable from *Ware*, where the error of failure to issue a written order confirming an oral announcement of a change in the court was sought to be cured by an affidavit subsequent to the trial. Here, the convening order is part of the record, duly authenticated with the command line, showing it was promulgated on 22 June 1978, which was during the trial proceedings. In the absence of a showing to the contrary, we presume the order was effective on the date it bears.

## V

■ Specifications 1, 3 and 5 of the Charge allege that appellant violated the

---

1. *See* Court-Martial Convening Orders numbered 2 and 16 in the Record of Trial at page 1.

2. *United States v. Saunders*, 6 M.J. 731 (A.C.M. R.1978) (en banc).

regulation by purchasing a specified number of "bottles" of liquor, in excess of the number authorized by the regulation. The regulation did not use the term "bottles," but limited an individual to a quantity of four "Qts/fifth" per month. Appellant asserts that this portion of each specification in question fails to state an offense. We disagree. No essential element of the offense is omitted, nor do the specifications fail to fairly apprise appellant as to what he must meet at trial. He is adequately protected from further prosecution for the same acts. *See United States v. Sell*, 3 U.S.C.M.A. 202, 11 C.M.R. 202 (1953).

## VI

■ The military judge, during instructions on findings, and as a part of his instruction particularly relating to credibility, stated:

It's really just a matter of you weighing the credibility of Commander Caruso and the system against your own common knowledge of the ways of the world, the operation of the ration control system here in Korea. (R. 98).

Appellant attacks the reference to the ration control system as error in that it involves a specialized area of knowledge not common to all military personnel. We find no error. It is sufficient that the matter be common knowledge in the "area in which the trial is held." Paragraph 147a, Manual for Courts-Martial, United States, 1969 (Revised edition). The ration control regulations apply to all armed forces personnel in Korea and the ration control system is a factual matter "known at once with certainty by all reasonably intelligent people in the community without the need of resorting to any evidential data at all." *Weaver v. United States*, 298 F.2d 496, 498 (5th Cir. 1962).

## VII

■ During the presentencing phase of the trial, the military judge refused to admit a record of previous nonjudicial punishment because it was not signed by the commanding officer. Following instruc-

tions on sentencing, a court member asked whether there were any "previous Article 15s [10 U.S.C.A. § 815]." The military judge responded:

MJ: Well you're—obviously you're not to consider anything in that nature. It would have been offered for you if it had any admissible element. I appreciate—that's why we give the Government a chance to do so. Sometimes they have them and they're not admissible, but you're certainly not to infer that in this case.

No contention is made that the court members knew of a record of previous punishment, nor that one had been sought to be admitted, but appellant complains that the trial judge's use of the pronoun "it" and his comment that sometimes they may exist and not be admissible, was enough to apprise the court of the existence of the record which had not been found admissible. We cannot agree. However, assuming the use of the word "it" to be error as claimed, the military judge's response as a whole was sufficient to instruct the court not to infer the existence of any prior punishment.

## VIII

■ Appellant contends the military judge erred in denying him an opportunity to obtain counsel. At an Article 39(a), 10 U.S.C.A. § 839(a) session, the trial defense counsel informed the military judge that just prior to coming into the courtroom, appellant had stated a desire to discharge his detailed defense counsel and assistant defense counsel. In the ensuing colloquy between the military judge and appellant, appellant was less than articulate, exceptionally equivocal and somewhat evasive as to why he wanted to discharge his detailed counsel, which of his other alternatives to choose, and what he might expect of another lawyer. He had made no prior request nor arrangements for any other counsel and had previously expressed no dissatisfaction with his detailed counsel, though it had been some 45 days since appellant had been informed of the charges. No motion for

continuance was expressly made, and while the military judge treated the matter as such, no express denial of a continuance was stated. The military judge pointed out that it was too late to delay the trial any further, and appellant agreed to keep his detailed counsel. The granting or denial of a motion for continuance lies within the sound discretion of the military judge. *United States v. Kinard*, 21 U.S.C.M.A. 300, 45 C.M.R. 74 (1972); paragraph 58, Manual for Courts-Martial, United States, 1969 (Revised edition). The military judge should:

> [W]eigh carefully the merits of a motion to continue and if it appears reasonable that it is not made on frivolous grounds or solely for delay, the request should ordinarily be granted.[3]

Under the circumstances in this case, the military judge did not abuse his discretion. His treatment of this matter, comprising three pages of the record (R. 59–62) reflects a solicitous effort by the trial judge to determine whether appellant was sincere. We are convinced the request was frivolous.

### IX and X

Assignments of error IX and X merit no discussion.

The findings of guilty and the sentence are affirmed.

FULTON, Senior Judge, concurring:

I concur in our disposition of each of the assigned errors. There is, however, a very disturbing aspect of this case that warrants special mention. After the charges against the appellant were referred to trial, the military judge detailed to the court was changed by amendment of the convening order. The assistant trial defense counsel questioned the substituted judge, who happened to be the chief judge of the circuit, about the rumored possibility that the change in detailed judges had come about because the convening authority disagreed with the originally detailed judge's view of the law pertaining to ration control violations.[1] When no information to support such a conclusion appeared, the defense abandoned the effort and did not challenge the trial judge or seek other relief.

The record of trial discloses the following interesting and questionable sequence of events. Court-Martial Convening Order No. 2, dated 26 January 1978, convened a special court-martial consisting of Judge Kaplan and ten officer members. A trial counsel and defense counsel also were detailed. On 25 April 1978, the Charge that appellant violated Article 92 (UCMJ, 10 U.S.C. § 892 (1976)) with six specifications alleging excessive purchases of controlled merchandise was referred to trial by that court. An amendment (Court-Martial Convening Order No. 11) dated 18 May 1978 relieved the trial and defense counsel for the appellant's case only and substituted the counsel who actually conducted the case (an assistant defense counsel was added by a subsequent amendment). The same orders relieved Judge Kaplan for the trial of two named accused (not the appellant) and substituted Judge Hammack in those two cases.

---

3. *United States v. Nichols*, 2 U.S.C.M.A. 27, 36, 6 C.M.R. 27, 36 (1952).

1. It is the chief circuit judge's reply that he, rather than a convening authority, determined which judge would sit in a given case that affords the basis for the contention, advanced for the first time on appeal, that the convening authority did not personally "detail" the military judge as required by Article 26(a), Uniform Code of Military Justice, 10 U.S.C. § 826(a) (1976). *See United States v. Newcomb*, 5 M.J. 4 (C.M.A.1978). The lead opinion holds this record sufficient to support a conclusion that the convening authority did personally detail the trial judge. "Detail" does not, of course, connote that a convening authority may "pick and choose" from among some or all of the judges designated as such by The Judge Advocate General for any reason, much less because of dislike for a judge's ruling in some prior case. The longstanding Army procedure of having a chief circuit judge determine the *availability of judges in the circuit (including himself)* for particular trials may have implied legislative sanction since the Congress chose to make statutory the Army's independent judiciary system by means of the Military Justice Act of 1968, Pub.L. 90–632, 82 Stat. 1335. Once the question of availability is determined, the convening authority, and not one of his subordinates, must make the final decision that the named judge will be detailed to the particular court. I read *Newcomb* as saying no more.

On the day before the appellant's court convened in an Article 39(a) session,[2] Court-Martial Convening Order No. 16, 19 June 1978, was promulgated, relieving Judge Kaplan and all ten officer court members for the appellant's trial and substituting Judge Hammack and six new officer members for the appellant's trial.[3] It was at this Article 39(a) session that the assistant defense counsel questioned the reason for the change in detailed judges.

The assistant defense counsel broached his inquiry into the change of trial judges by stating that, "Recently we have been informed that the convening authority will not detail Captain Kaplan to any ration control cases, as before, the case was put on trial with Captain Kaplan. Do you have any idea why this has been done?" I interpret Judge Hammack's reply (he being the chief circuit judge) as indicating clearly that he, rather than convening authorities, determined judicial assignments within the circuit and that there had been no change in judicial assignments for this case so far as he was concerned. Counsel seemed satisfied with that explanation. When he again alluded to the rumor concerning referrals to Judge Kaplan, the trial counsel responded that he had found no basis for the rumor, and the assistant defense counsel then suggested that it may have come from the 2d Division (a different court-martial jurisdiction). As I have previously indicated, I do not regard the chief circuit judge's assignment responsibilities, which presently are reflected in paragraphs 9–6 and 9–7 of Army Regulation 27–10, Military Justice (November 1968, as changed by amendments through Change No. 17, 15 August 1977), as conflicting with the decision in *United States v. Newcomb*, 5 M.J. 4 (C.M.A. 1978).[4]

The absence of evidence of impropriety in the detail of a military judge to this case does not, however, make me entirely comfortable with the procedures involved. In *United States v. Hardy*, 4 M.J. 20 (C.M.A. 1977), the Court of Military Appeals dealt with a possibility that the discretion of a subordinate convening authority may have been improperly interfered with by a superior authority and the subordinate required to withdraw charges from the inferior court to which he had referred them. Because of the difficulty in reviewing such cases, the Court of Military Appeals now requires "an affirmative showing on the record of the reason for withdrawal and rereferral of any specification." That is because, the Court said, "Only in this way can we assure compliance with the admonition of paragraph 56a of the Manual that '[i]n no event will a specification or case be withdrawn arbitrarily or unfairly to the accused.'" *Id.* at 25. We have held that this requirement applies as well to cases in which the only convening authority involved withdraws all charges from one court and refers them to another of his own choosing having the same jurisdiction. *United States v. Meckler*, 6 M.J. 779 (A.C.M.R.1978), *pet. denied*, 6 M.J. 779 (C.M.A.1979).

An analogous event transpired here. Changing the military judge and all of the members after the case was referred to trial (not to mention changing all of the members a second time and after the trial had begun at that) is analogous to withdrawing the charges from one court and referring them to another. Unexplained, it is a move that scarcely can enhance the reputation of the military justice system; in fact, such actions feed the fires of criticism. One experienced in the administration of military justice in the field readily can conceive of cogent administrative and

---

**2.** Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a) (1976).

**3.** Nor was this the last change made. When, in the Article 39(a) session, the trial counsel was accounting for the absent members, he, besides naming the six officers, also named four enlisted men who are neither mentioned in Convening Order No. 16 nor in any other order in our copy of the record. Furthermore, two days later and one day before trial on the merits, the six new officer members were replaced by still six more officers (one of whom had been among the ten originally appointed).

**4.** Note 1, *infra*.

entirely innocent reasons why such maneuvers might be necessary. Silence on the record, however, requires too much of appellate imagination (which in any event cannot rise to the level of judicial notice). I strongly suggest that trial counsel follow the *Hardy* rule in such cases as this one.[5] Respect for the military justice system deserves no less.

WATKINS, Judge, concurring:

I concur in the lead opinion. I also agree with many of the comments of Senior Judge Fulton in his separate concurring opinion but prefer to leave for another day the issue of whether the rule in *United States v. Hardy*, 4 M.J. 20, 25 (C.M.A.1977) should be extended.

---

**5.** I subscribe to the view that rules of judicial convenience "should not be utilized to impose onerous burdens upon the Government that are not within the framework of the Uniform Code and the procedural requirements of the Manual for Courts-Martial, United States, 1969 (Revised edition)." *United States v. Iverson*, 5 M.J. 440, 447 (C.M.A.1978) (Cook, J., concurring in the result). Accordingly, and despite having adopted the view that the procedural requirement imposed in *United States v. Hardy*, 4 M.J. 20, 25 (C.M.A.1977), is not limited to the particular facts of that case—*United States v. Meckler*, 6 M.J. 780 (A.C.M.R.1978), *pet denied*, 6 M.J. 779 (C.M.A.1979)—I do not suggest the formalization of a rule; only the wisdom of a practice to avoid needless appellate litigation if not indeed harsher results.