UNITED STATES, Appellee,

v.

Private (E–1) Earnest GORDON, SSN
345–52–7798, United States
Army, Appellant.

SPCM 13774.

U. S. Army Court of Military Review.

28 June 1979.

Major Benjamin A. Sims, JAGC, Major Lawrence D. Galehouse, JAGC, and Captain Allan T. Downen, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, and Captain Douglas P. Franklin, JAGC, were on the pleadings for appellee.

Before FULTON, WATKINS and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

FULTON, Senior Judge:

In the context of a special court-martial convened by a general court-martial convening authority and empowered to adjudge a bad-conduct discharge,[1] we are asked to determine that Army regulations pertaining to the appointment of judges to courts-martial unlawfully interfere with the convening authority's statutory obligation to personally detail the trial judge. We decline to so hold.

Appellant's trial by special court-martial was presided over by Captain James D. McManus, Jr., as the military trial judge. His detail was evidenced by Court-Martial Convening Order Number 8, Headquarters, U.S. Army Test and Evaluation Command [TECOM], Aberdeen Proving Ground, Maryland, dated 28 August 1978, with the authority line "By Command of Major General Powers." At the outset of the trial,

---

1. We note this distinction because certain of the statutory requirements as to military judges pertain only to general courts-martial. See, e. g., Article 26(c), Uniform Code of Military Justice, 10 U.S.C. § 826(c) (1976). The conditions and procedures under which military judges are detailed to special courts-martial empowered to adjudge a bad-conduct discharge and to ordinary special courts-martial may be found to vary according to the type of court and among the several armed forces.

Judge McManus asked the trial counsel whether he had information indicating that the personnel of the court were "personally selected by the convening authority." The trial counsel said that he did. When the defense challenged the accuracy of that information, the trial counsel produced documentary evidence.

The document introduced was a Disposition Form Comment No. 1, subject: "Appointment of Standing TECOM General and Special Courts-Martial," dated 22 August 1978, from the staff judge advocate to the "Commander, TECOM." As its subject indicates, the document looked to the convening of both a general court-martial and a special court-martial for the trial of cases arising within the command. Attached to it were lists of nominees from which the convening authority was to select court members for each court. Paragraph 7, entitled "Military Judge," of the Disposition Form reads as follows:

a. The law requires that you, as the convening authority, detail the military judge designated by the general court-martial judge having primary responsibility for supervising this GCM jurisdiction.

b. LTC Jack M. Marden, JAGC, US Army Judiciary, duty station at Fort Dix, New Jersey, has been designated the primary judge for this area of the First Judicial Circuit.

c. In accordance with the law, you must appoint Judge Marden.

d. The law requires that you, as the convening authority, detail the special court-martial judge who has been designated as having the primary responsibility for supervising this SPCM jurisdiction.

e. CPT James D. McManus, JAGC, US Army Judiciary, duty station at Fort Meade, Maryland, has been designated the primary judge for this SPCM jurisdiction.

f. In accordance with the law, you must appoint CPT McManus.

When the trial judge noted that the document did not itself disclose what the convening authority had done, the staff judge advocate appeared and testified as to the manner in which the convening authority chose the court members.[2] Asked whether the convening authority also had "personally selected" the military judge, the staff judge advocate replied affirmatively. The trial defense counsel offered no evidence to the contrary and the trial proceeded to its conclusion.[3]

The error assigned by the appellant is as follows:

THE CONVENING AUTHORITY WAS INCORRECTLY ADVISED THAT THE LAW REQUIRED HIM TO APPOINT A SPECIFIC MILITARY JUDGE TO APPELLANT'S COURT-MARTIAL, THEREBY USURPING HIS AUTHORITY TO PERSONALLY DETAIL THE MILITARY JUDGE AND RENDERING THE PROCEEDINGS JURISDICTIONALLY DEFECTIVE.

At the outset, we note that Article 26(a) of the Uniform Code of Military Justice, 10 U.S.C. § 826(a) (1976), provides in part that "[t]he authority convening a general court-martial shall, and, *subject to regulations of the Secretary concerned,* the authority convening a special court-martial may, detail a military judge thereto." (Emphasis added.)[4] Regulations promulgated by the Secretary of the Army establish a system, known as the Military Judge Pro-

---

**2.** Because the staff judge advocate testified, post-trial review and action were accomplished in a different jurisdiction. *Cf. United States v. Treadwell,* 7 M.J. 864 (A.C.M.R.1979).

**3.** On pleas of guilty, appellant was convicted of aggravated assault and breaking restriction. Despite pleading not guilty, he also was convicted of two additional assaults and communicating a threat. His sentence to a bad-conduct

discharge, confinement for five months, and partial forfeitures ($200.00 monthly) for five months was approved by the convening authority.

**4.** A special court-martial may not adjudge a bad-conduct discharge unless a military judge is detailed to it or one cannot be detailed because of physical conditions or military exigencies. Art. 19, UCMJ, 10 U.S.C. § 819 (1976).

gram, in which military judges are designated and *made available for detail* as judges of general and special courts-martial. Army Regulation 27–10, *Legal Services: Military Justice,* pars. 9–1, 9–2a (26 November 1968 with amendments through Change No. 19, 1 March 1979). This system entails the designation of judicial circuits comprised of one or more general court-martial jurisdictions, or all such jurisdictions within a defined area; stationing judges at particular locations within a circuit; and designating from among them a chief circuit military judge, one of whose responsibilities is to determine which general court-martial jurisdictions will be the primary responsibility of each military judge of general courts-martial within his circuit. Army Regulation 27–10, *supra,* pars. 9–2f–g, 9–4, 9–6c. As for special courts-martial—

> The military judge of general courts-martial designated as primarily responsible for a general court-martial jurisdiction . . . will designate himself or another military judge assigned to the US Army Judiciary and within his area of responsibility as primarily responsible for each special court-martial jurisdiction included in the general court-martial jurisdiction. *The military judge so designated will normally be detailed to preside over the special courts-martial convened in that jurisdiction.* When he is not available, the general court-martial judge who designated him will select a replacement from the military judges assigned to the US Army Judiciary under his area of responsibility or, if that is not possible, request the chief circuit military judge for a replacement.

Army Regulation 27–10, *supra,* 9–7b (emphasis added); *cf. id.* par. 2–15b (ordinary special courts-martial).

Thus, the Secretary of the Army has placed limits on the selectivity that may be exercised by a convening authority in search of a military judge. We believe that such limits enjoy implied legislative approval. The Army procedures—at least insofar as general courts-martial are concerned—predate the Military Justice Act of 1968, Pub.L. 90–632, 82 Stat. 1335. See Army Regulation 22–8, *Military Justice: United States Army Judiciary—Law Officer Program,* par. 6 (14 October 1964). The Military Justice Act of 1968 made changes in the Uniform Code of Military Justice that were designed to "enact into law the general principles of the 'independent field judiciary' system already adopted administratively by some of the armed services." S.Rep. 1601, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin.News, pp. 4501, 4507.[5]

Even if we thought that a decision of the Court of Military Appeals could nullify (on grounds other than constitutional) a procedure tacitly approved by the Congress, we would not find that the Court's decision in *United States v. Newcomb,* 5 M.J. 4 (C.M.A. 1978), casts any shadow across the detail of the military judge in this case.

■ In *Newcomb,* the Court held "that the purported delegation of power from the convening authority to a subordinate officer to detail the military judge . . . to the appellant's court-martial was . . . contrary to the intent of Congress," and that the resultant "failure to have a properly detailed trial judge presiding over that court-martial rendered that body jurisdictionally defective." *Id.* at 7. Substantially the entire rationale of the opinion dealt with the problem of delegability. Interestingly, the Court observed a difference be-

---

5. We previously noted that many features of the Army Military Judge Program implement Article 26(c), UCMJ, 10 U.S.C. § 826(c) (1976), establishing an independent judiciary of general court-martial judges designated by the Judge Advocates General. See note 1, *supra.* The detail of special court-martial judges is made subject to regulation by the service Secretaries who certainly can adopt the same requirements for judges of the lower courts. Provisions acceptable to the Congress for general courts-martial hardly can be said to be unacceptable for lower courts. We also note the existence of other limitations on a convening authority's "selection" of judges. See paragraphs 4f and 4g, Manual for Courts-Martial, United States, 1969 (Rev. ed.).

tween Article 25, which requires a convening authority to detail as members of the court "such members of the armed forces as, in his opinion, are best qualified,"[6] and Article 26, *supra,* 10 U.S.C. § 826, which merely requires that he "detail a military judge." The Court concluded that, whatever the significance of the difference, it did not indicate that the function of detailing a military judge could be delegated. *Id.* at 6. The difference is significant to this case because it likewise reveals no suggestion that the convening authority select the military judge, either because he deems him "best qualified" or for any other reason. "Select" and "detail" are not coextensive terms. *Newcomb* holds only that the convening authority, and not someone else, must "detail" the military judge to the court-martial and not that he must select the judge in the first instance.[7]

It is unquestioned that approval to list Judge McManus as the military judge of the court that tried appellant was personally given by the convening authority. Because paragraph 9–7*b* of Army Regulation 27–10, *supra,* provides only that the military judge designated by the responsible general court-martial judge will "normally" be detailed to preside over the special courts-martial convened in the jurisdiction, there may be circumstances in which a convening authority might properly request a judge other than the one initially made available.[8] There is no contention that any such circumstances existed in this case, however.

■ Accordingly, we hold that the staff judge advocate's advice to the convening authority concerning appointment of Judge McManus was correct, that a convening au-

thority's obligation and authority to detail the military judge are not impaired by compliance with current Army regulations pertaining to the availability of military judges for detail, and that the convening authority personally detailed Judge McManus to the court as contemplated by *United States v. Newcomb, supra.*

■ One remaining matter has been brought to our attention. The convening authority's action purports to apply the partial forfeitures to pay *and allowances* becoming due on and after the date of his action. That is an all-too-common inadvertence. *United States v. Michael,* 44 C.M.R. 645 (A.C.M.R.1971). It is error because partial forfeitures involve only pay, not allowances. See *United States v. Judson,* 3 M.J. 908, 910 n. 2, 912 (A.C.M.R.1977) and *United States v. Nelson,* 1 C.M.R. 697, 698 (A.F.B. R.1951), between the dates of which at least 20 other Army and Air Force published decisions have mentioned the same error.

The findings of guilty and the sentence are affirmed. However, the forfeitures shall apply only to *pay,* not allowances, becoming due on and after the date of the convening authority's action (11 January 1979).

Judge WATKINS and Judge LEWIS concur.

---

6. Art. 25, UCMJ, 10 U.S.C. § 825 (1976).

7. *See United States v. Mixson,* 5 M.J. 236 (C.M. A.1978); *see also United States v. Livingston,* 7 M.J. 638 (A.C.M.R.1979), slip op. at 6 n. 1, 8 (Fulton, Sr., J., concurring).

8. Such a circumstance might arise when the judge's docket would not permit the case to be brought to trial at an early date.