UNITED STATES, Appellee,

v.

Charles F. HARDY, Private, U. S. Army, Appellant.

No. 30,855.
CM 432789.

U. S. Court of Military Appeals.

Nov. 28, 1977.

*Captain Jay Sacks Cohen* argued the cause for Appellant, Accused. With him on the briefs were *Colonel Alton H. Harvey, Captain John R. Osgood, Captain Robert D. Jones,* and *Captain Buren R. Shields, III.*

*Captain Keith H. Jung* argued the cause for Appellee, United States. With him on

the briefs were *Lieutenant Colonel Donald W. Hansen, Lieutenant Colonel Ronald M. Holdaway, Major Steven M. Werner, Captain John F. DePue,* and *Captain Joel M. Martel.*

### Opinion of the Court

PERRY, Judge:

The appellant was convicted by a general court-martial of wrongful possession and sale of lysergic acid diethylamide (LSD), in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. Thereupon, he was sentenced to a dishonorable discharge, confinement at hard labor for 18 months, and forfeiture of all pay and allowances. The convening authority approved the findings and so much of the sentence as provided for a dishonorable discharge (which he suspended for 6 months, with provision for automatic remission, but which suspension subsequently was vacated), confinement for 6 months, and forfeiture of $225 pay per month for 6 months. The United States Army Court of Military Review affirmed the findings and the sentence as modified.

Prior to his trial by general court-martial, these charges against the appellant had been referred for trial to a special court-martial (without authority to adjudge a punitive discharge) by the appellant's special court-martial convening authority.[1] Approximately 2 weeks later, and before this special court had convened for trial, the general court-martial convening authority directed the special court-martial convening authority, his military subordinate, to withdraw the charges from the special court and to refer them to an investigation pursuant to Article 32 of the Uniform Code. He further ordered that the charges and the report of investigation then be submitted to him for disposition. The special court-martial convening authority complied with this order of his military superior and, in due course, the charges were referred to a general court-martial for trial as above indicated.[2] We granted review to consider the appellant's contention that the general court-martial convening authority erred by ordering the special court-martial convening authority to withdraw the charges from the special court-martial where they had been initially referred and by subsequently referring them for trial by general court-martial. Upon this ground, we reverse.

### I

The special court-martial convening authority had the power to withdraw the charges against the appellant from the special court to which he had referred them for trial—and he could do so "for any reason." Paragraph 56a, Manual for Courts-Martial, United States, 1969 (Revised edition); *see United States v. Kirsch,* 15 U.S.C.M.A. 84, 35 C.M.R. 56 (1964). However, as this same Manual provision notes, there are two factors which "will have an effect upon the action that may subsequently be taken": the grounds upon which the withdrawal is occasioned and the time at which it is directed. In the case at bar, since the withdrawal occurred prior to the convening of the special court-martial, there are no adverse consequences, such as double jeopardy, to future prosecution of the charges flowing from the timing of the withdrawal. However, the ground for the special court-martial convening authority's action is a matter which must be carefully examined. While he might withdraw the case "for any reason," to avoid any untoward impact on the subsequent prosecution which took place, that withdrawal must have been for a "proper reason." *United States v. Walsh,* 22 U.S.C.M.A. 509, 511, 47 C.M.R. 926, 928 (1973); *see* paragraph 33*j* (1), Manual, *supra.*

---

1. The appellant's company commander had recommended trial on these charges by special court-martial.

2. The Article 32 investigating officer, the acting special court-martial convening authority (who, in the interim, had replaced the officer who initially had referred the case to special court-martial), and the staff judge advocate all recommended trial by general court-martial.

The record in this case permits the inference that the reason that the special court-martial convening authority withdrew the case from the special court was that he was ordered to do so by the general court-martial convening authority—his military superior. If so,[3] for this to have been a "proper reason," the general court-martial convening authority must somehow have had the legal prerogative to have ordered that such action be taken. So, our inquiry narrows to whether the general court-martial convening authority had the power to order his subordinate to withdraw a case from an inferior court-martial to which that subordinate had already referred it through a valid exercise of the latter's authority under Article 23, UCMJ, 10 U.S.C. § 823.

## II

■ There is a policy in the military justice system that any charge against an accused, if it is to be tried at all, should be tried at the lowest level of court which has the power to adjudge an appropriate sentence. This policy guidance is articulated in paragraphs 30*g* and 33*h* of the Manual and was recognized by this Court in the following language in *United States v. Hawthorne*, 7 U.S.C.M.A. 293, 298, 22 C.M.R. 83, 88 (1956):

> [C]onsistent with the fundamental purposes of the Uniform Code to assure a just punishment in each individual case . . ., the Manual directs that if the charges are to be "tried at all, [they] should be tried at a single trial by the lowest court that has power to adjudge an appropriate and adequate punish-

ment." Manual for Courts-Martial, supra, paragraph 30*f* . . . . And if the Commander concludes that it would be a just punishment if the court adjudges a punitive discharge, upon conviction of the offense charged, consideration should be given to the "court the case should be referred in order that the appropriate kind of discharge—dishonorable or bad-conduct—may be adjudged." Manual for Courts-Martial, supra, paragraph 33*h*. At the same time, the established policies promulgated by superior authority should be considered.

Reflective of this policy, and to the end of accomplishing it, the Uniform Code of Military Justice provides for the "exercise of discretion by inferior commanders in disposing of charges administratively or by trial by the lowest court that has the power to adjudge an appropriate and adequate punishment . . . ." *United States v. Wharton*, 33 C.M.R. 729, 733 (A.F.B.R.1963), *petition denied*, 33 C.M.R. 436 (1963). Illustratively, Article 15 of the Code authorizes low level commanders to impose nonjudicial punishment for disciplinary infractions when appropriate; Article 23 allows subordinate commanders to convene special courts-martial;[4] Article 24 provides for subordinate commanders to convene summary courts-martial. Exercise of some of these powers may in a proper manner be restricted. *See e. g.,* Article 15(a), UCMJ, 10 U.S.C. § 815(a); paragraph 5*b*(4), Manual, *supra*.[5] However, unless they *are* so limited, their exercise pursuant to pertinent codal authority must be without interference. Article 37(a), UCMJ, 10 U.S.C.

---

**3.** As this inference is not excluded by, but rather is strongly suggested in, the record, we will assume, for the purpose of discussing the legal propriety of doing so, that the special court-martial convening authority acted in response to his superior's order.

**4.** *See* Department of Army Pamphlet 27–18, Desk Book for Special Courts-Martial Convening Authorities, January 9, 1974, Figure 5–2, which chart is referenced in paragraph 5–4, for the hierarchy of options normally open to a special court-martial convening authority for disposing of a case which reaches his level, the most severe of which is appointment of an

Article 32 officer and subsequent forwarding of the charges with recommendation for reference to general court-martial.

**5.** Paragraph 5*b*(4), Manual for Courts-Martial, United States 1969 (Revised edition), provides:

> A subordinate commander may exercise his power to convene special courts-martial unless a competent superior reserves that power to himself and so notifies the subordinate.

*See United States v. Rembert*, 47 C.M.R. 755 (A.C.M.R.1973), *petition denied*, 23 U.S.C.M.A. 598 (1974).

§ 837(a). Paragraph 56a of the Manual, provides, *inter alia* :

Although the convening authority may withdraw, or cause to be withdrawn, any specification or an entire case from the consideration of any court for any reason, both the grounds upon which the specification or case is withdrawn and the time at which the withdrawal is directed will have an effect upon the action that may subsequently be taken. Withdrawal is accomplished by the convening authority directing the prosecution to take the necessary action to remove from the consideration of a particular court a specification and, when appropriate, the charge under which it is laid or the entire case. This action may be taken *only when directed by the convening authority*, who may give such a direction either on *his own initiative or on application made to him.* [Emphasis added.]

■ Thus, it is clear that when a subordinate commander properly exercises the statutory discretion entrusted to him, and convenes a special court-martial and refers a specific case thereto for trial, only that convening authority may effect the withdrawal of that case from that court, and his action in doing so must result from his *own* decision made pursuant either to his *own initiative* or to *application* made to him for such action. His action in withdrawing a specific case from a court to which it already properly had been referred must not be the result of a superior's *order* to do so pursuant to the *superior's* decision.[6] We believe that to tolerate otherwise would permit that superior commander, in a specific case and after-the-fact, to influence directly the action of the subordinate convening authority with respect to the latter's judicial acts[7] already properly taken in that case, in contravention of Article 37(a) of the Code. Thus, the general court-martial convening authority's order, rather than constituting a "proper reason" for the withdrawal action by the special court-martial convening authority, violated Article 37(a), UCMJ.

The Government has argued that strict adherence by this Court to a position that subordinate commanders up and down the line can do what they please pursuant to these statutory provisions would frustrate the command powers of the superior commander and would threaten to undermine the morale and to eviserate the combat efficiency of the unit and its ability to carry out successfully its military mission. We have no desire to tie the hands of any commander in the fulfillment of his military mission. In other words, we will not interfere with him when he is acting principally as a commander.[8] While the line of

6. *Cf. United States v. Rembert*, supra. There, the general court-martial convening authority had issued a command directive on "Processing of Serious Offenses." Therein, that commanding general noted that the increasing frequency of certain listed offenses was having an adverse impact on the "combat effectiveness and morale of the entire command" and spoke "ill of this installation's ability to provide a safe and happy place for military dependents and civilians to reside." Therefore, the general directed his subordinate commanders to forward to him, prior to referral to a special court-martial or any lesser action, the file in any case involving one of the listed offenses. Subsequent to the issuing of this letter, a subordinate special court-martial convening authority, nonetheless, referred a case involving such an offense for trial by a special court. Thereupon, the general court-martial convening authority ordered his subordinate to withdraw the case from the special court and to forward the file to him pursuant to his letter.

The Army Court of Military Review, after first finding that the letter, under the circumstances, was lawful, ruled that the order to withdraw the case from the special court-martial merely required compliance with this legal letter and, therefore, constituted a "proper reason" for withdrawal, which permitted the subsequent referral of the case for trial by general court-martial.

7. *See United States v. Simpson*, 16 U.S.C.M.A. 137, 36 C.M.R. 293 (1966); *United States v. Bunting*, 4 U.S.C.M.A. 84, 15 C.M.R. 84 (1954).

8. As Judge Latimer stated it in his opinion concurring in the result in *United States v. Hawthorne*, 7 U.S.C.M.A. 293, 300, 22 C.M.R. 83, 90:

[W]e must differentiate between the virtues of command responsibility and the vices of command control. It is just as important to both military justice and discipline that we permit commanders to exploit their command functions as it is that we stamp out any attempt to control the judicial processes.

distinction between command and justice activity may be a thin one both for the commander and for this Court to walk, see *United States v. Hawthorne, supra,* it is one which, nonetheless, must be recognized and must scrupulously and conscientiously be observed.

As stated above, this line between legitimate concern for the military function of command and the improper interference with the judicial process may on occasion be a hazy one to discern. However, most often a given action will augur for one more than the other. See e. g., *Petty v. Moriarty,* 20 U.S.C.M.A. 438, 43 C.M.R. 278 (1971). The United States Army Court of Military Review, in *United States v. Rivera,* 45 C.M.R. 582 (1972), addressed the matter of the runaway subordinate commander and set out what it deemed "several legitimate means" by which a superior military commander might limit the actions of his subordinate commanders, allegedly taken pursuant to authority of the Uniform Code, which otherwise might pose a valid threat to the unit's military capabilities.[9] None of these suggested options are at issue here and, therefore, we presently decline gratuitous comment on the legal viability of any or all of them. Nevertheless, it is noteworthy that each possibility involves action by the superior *before* the subordinate takes action pursuant to the Code on any *specific* case. Where, as here, the superior commander seeks to affect a *particular* case by *countermanding* a discretionary judicial decision of a subordinate commander which the latter made pursuant to his then existing powers under the Uniform Code of Military Justice, the superior has injected the spectre of unlawful command control over the judicial act of the subordinate. This contravenes

the intent of Article 37(a), UCMJ. The viewpoint of this Court is well stated in the following excerpt from *United States v. Hawthorne, supra* at 299, 22 C.M.R. at 89:

We fully appreciate the commanding general's need for broad regulatory authority in his command for the maintenance and improvement of discipline for the effective fulfillment of his assigned mission. We have no disposition to curb him in the exercise of his powers. On the contrary, we have consistently upheld him when he has exercised his proper functions. For example, in *United States v. Gray,* 6 U.S.C.M.A. 615, 20 C.M.R. 331, we pointed out that a "commander has plenary power over his subordinate officers regarding command functions." However, when the commander extends his authority into forbidden areas, we must strike down his action. Here, he acted improperly in a field outside his command competency.

· · · In sum, the policy directive directly tended to control the judicial processes rather than merely attempting to improve the discipline of the command. It was, therefore, illegal.

### III

In the case of this appellant, as in many similar instances, the reason for the special court-martial convening authority's withdrawal of the case from the special court is a matter subject merely to speculation. As this Court observed in *United States v. Jackson,* 24 U.S.C.M.A. 57, 58, 51 C.M.R. 186, 187, 1 M.J. 242, 243 (1976):

While the better practice is always to make such a "proper reason" a matter of

---

**9.** That court suggested the following possibilities: the superior commander might withhold the Article 15 power of his subordinate—see Article 15(a), Uniform Code of Military Justice, 10 U.S.C. § 815(a), and paragraph 128a, Manual, *supra;* " 'policy declarations generally conceded to be necessary to discipline and order' " [which amount to less than a command and which do not restrict the subordinate's choice] are permitted—see *United States v. Betts,* 12 U.S.C.M.A. 214, 30 C.M.R. 214 (1961); the superior may direct his subor-

dinate to inquire into a suspected offense and to prefer appropriate charges if the facts from the inquiry warrant—paragraph 29b, Manual, *supra;* and the superior might withhold the decision as to referral of a case to court-martial to himself for a specified class of cases if such a class of offenses presented a particular disciplinary need within that command—see *United States v. Hawthorne, supra* (Latimer, J., concurring). Additionally, see paragraph 5b(4), Manual, *supra,* quoted in footnote 5, *supra,* and *United States v. Rembert, supra.*

record, we have held previously that there is no specific requirement that the reason for removal appear on the record if withdrawal precedes the taking of evidence. *United States v. Walsh* [22 U.S.C. M.A. 509, 47 C.M.R. 926 (1973)], *supra; United States v. Lord*, 13 U.S.C.M.A. 78, 32 C.M.R. 78 (1962).[10]

Senior Judge Ferguson, in a forceful dissent in *Jackson*, argued that if the reason for withdrawal had to be "proper," whether it *was* proper is a matter for appellate review and the only way an appellate tribunal may perform this function is if the matter affirmatively is made a matter of record at the trial level. We are persuaded by the logic of the Senior Judge's position. Therefore, we will require, for all trials beginning on or after the effective date of this decision, an affirmative showing on the record of the reason for withdrawal and rereferral of any specification. Only in this way can we assure compliance with the admonition of paragraph 56a of the Manual that "[i]n no event will a specification or case be withdrawn arbitrarily or unfairly to the accused."

## IV

Remaining for discussion is the remedy which must prevail in these circumstances. In *United States v. Walsh, supra* at 512, 47 C.M.R. at 929, this Court discussed in some detail whether an error of this nature is jurisdictional; whether it required a search for specific prejudice to the accused; or whether application of a concept of general prejudice to the stage or stages of the proceedings affected is appropriate. For the reasons stated there, the Court determined upon the latter course; it found no indication that the guilty pleas before the military judge were in any way affected (*i. e.*, involuntarily made) by the improper withdrawal, but, rather, decided that the dispute surrounding the withdrawal was limited to the sentencing stage before the court members. *But see United States v. Fleming*, 18 U.S.C.M.A. 524, 40 C.M.R. 236 (1969).

It must be remembered that "[a] court-martial organized under the laws of the United States is a court of special and limited jurisdiction. It is called into existence for a special purpose . . ." *Runkle v. United States*, 122 U.S. 543, 555, 7 S.Ct. 1141, 1146, 30 L.Ed. 1167 (1887). That special purpose—its *sole* purpose—is to hear cases sent to it for trial. Thus, even if a court-martial, as an entity, does exist—in that it is properly convened and constituted in entire conformity with the statute, *see Wright v. United States*, 24 U.S.C.M.A. 290, 52 C.M.R. 1, 2 M.J. 9 (1976)—it, nonetheless, lacks jurisdiction over *any given case* unless and until that case properly is *referred* to it for trial. This is implicit in the decisions of this Court as far back as *United States v. Emerson*, 1 U.S.C.M.A. 43, 1 C.M.R. 43 (1951), where the Court intimated that there had to be a proper referral of the case to the court-martial which tried it in order to vest it with jurisdiction; the only question was whether such a proper referral had occurred under the facts of that case. The suggestion of the need for a proper referral of a case to the court which tried it reappeared in *United States v. Griffin*, 13 U.S.C.M.A. 213, 214, 32 C.M.R. 213, 214 (1962). There, the court held that a "formal written order of reference" was not necessary, noting the sufficiency of an oral referral and citing *Emerson*. *See also United States v. Singleton*, 21 U.S.C.M.A. 432, 45 C.M.R. 206 (1972), where the Court found it crucial that there had been no prior curative oral modification of the original order which was defective. In any given case, the question must be decided whether, under the facts and the applicable law, there has been a proper referral. If *not*, no jurisdiction was vested in that court-martial to try that particular case. If the appellant's case was never properly referred to the

---

10. The majority opinion in *Jackson* noted that the Court of Military Review had factually determined the reason for the withdrawal in that case; that the factual resolution was supported by evidence of record; and that the reason was not a legally improper one. Therefore, because of the factfinding performed by the intermediate appellate court, the reason for the withdrawal was a matter of record. There are no such facts found in this record.

general court-martial which tried and sentenced him, the entire proceeding was affected in a jurisdictional sense.

The decision of the United States Army Court of Military Review is vacated. The record is remanded to the Judge Advocate General of the Army. A rehearing by general court-martial may be ordered by another convening authority limited to a factual inquiry into the basis for the special court-martial convening authority's action herein. Thereafter, the judge will enter findings of fact and conclusions of law. Unless he determines that the withdrawal was not in response to the general court-martial convening authority's order to that effect, the military judge will set aside the findings and the sentence herein. In that event the appellant's current special court-martial convening authority may either dismiss the charge and specifications or take prompt steps to try him by a court-martial of no higher level than a special court-martial which is not authorized to adjudge a punitive discharge. On the other hand, if the military judge concludes that the special court-martial convening authority withdrew the charge from the special court-martial for an acceptable reason, he will forward to the United States Army Court of Military Review the complete record of trial, including the record of the proceedings at the limited rehearing, for its review and action consistent with this opinion.

Chief Judge FLETCHER concurs.

COOK, Judge (dissenting):

The challenge here is to the authority of a general court-martial commander, in the exercise of his general functions as a commander, to overrule a decision by a subordinate commander as to the disposition of a criminal charge against a member of the command. Acknowledging that a superior commander may have "plenary power" over his subordinate commanders when "on the battlefield," appellate defense counsel contend, and the majority agree, that no such authority exists in regard to a "judicial" act, placed within the competence of a subordinate commander by the Uniform Code.

Citing a number of cases, exemplified by *United States v. Simpson*, 16 U.S.C.M.A. 137, 36 C.M.R. 293 (1966), counsel observe that a decision to refer a case to one of the three kinds of courts-martial provided by the Uniform Code is a "judicial" act, which, within the framework of his premise, is not subject to control by a superior commander.

A military force is hierarchical in nature, with an organizational arrangement and lines of authority calculated to assure a superior commander control over his subordinates. For several reasons, including the long train of abuses of the power of command in regard to courts-martial practices that was witnessed during World War II, Congress, in enacting the UCMJ, imposed curbs on the exercise of command authority in enforcement of the military penal law. The limitations are so crucial to the integrity of the military justice system that an apparent violation "is as much to be condemned as" an actual violation. *United States v. Johnson*, 14 U.S.C.M.A. 548, 551, 34 C.M.R. 328, 331 (1964). In other words, the appearance of evil is as intolerable as the evil itself. *United States v. Hawthorne*, 7 U.S.C.M.A. 293, 297, 22 C.M.R. 83, 87 (1956). Still, the limitations are not so pervasive as to expunge all command authority in this field.

In *United States v. Gray*, 6 U.S.C.M.A. 615, 20 C.M.R. 331 (1956), the Court held the empowerment of a commander, by Article 9 of the Uniform Code, to place a member of his command into confinement for a violation of the Code could properly be curtailed by a superior commander. In *United States v. Hawthorne, supra* at 299, 22 C.M.R. at 89, while the Court struck down a directive by a division commander to subordinate commanders which had the effect of compelling them to exercise, in a particular way, a discretion granted them by the Uniform Code and the Manual for Courts-Martial, it took care to declare that it had "no disposition to curb . . . [the superior] in the exercise of his powers" as commander. *See also United States v. Rembert*, 47 C.M.R. 755 (A.C.M.R.1973).

Unlike the action of the division commander in *Hawthorne*, the division commander here did not compel his subordinate to exercise his own discretion as to the disposition of the charges in a particular way. Rather, he asserted his independent authority to make a different disposition than that made by his subordinate. His action, therefore, superseded that of his subordinate, without forcing the latter to reject a judgment he was entitled to make under the Code. The Court commented on a circumstance of this kind in *United States v. Kirsch*, 15 U.S.C.M.A. 84, 35 C.M.R. 56 (1964). It indicated that "[c]ommand responsibility" is involved when a superior commander overrules the decision of a subordinate as to both dismissal of a charge and in regard to "a decision to withdraw charges that are at trial." *Id.* at 93, 35 C.M.R. at 65. I conclude, therefore, that a superior commander has authority to override the decision of a subordinate as to the disposition of a charge against a member of the command and can, as here, direct withdrawal of a charge from a court-martial to which it has been referred for trial by the subordinate. *United States v. Thomas*, 51 C.M.R. 402, —— N.J. —— (A.C.M.R.1975).

Still left for consideration is whether the superseding action by the division commander can properly be given effect in the circumstances of this case. The Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 56*a*, provides that "a specification or case" referred to a court-martial for trial will "[i]n no event . . be withdrawn arbitrarily or unfairly to the accused." As the provision is not contrary to, or inconsistent with, any provision of the Uniform Code, it has the force of law. *United States v. Smith*, 13 U.S.C.M.A. 105, 32 C.M.R. 105 (1962). The language of the provision is mandatory, and there is no differentiation as to the authority who orders the withdrawal.

Nothing has been presented by either the Government or the accused as to the reasons for the decision to withdraw the charges from the special court-martial. Appellate defense counsel suggest that absent an indication in the record of "proper reasons" for the withdrawal it cannot reasonably be concluded that the withdrawal was not arbitrary or unfair. Had the subordinate commander withdrawn the charges on his own initiative, the existence of a proper reason would be presumed. *United States v. Lord*, 13 U.S.C.M.A. 78, 32 C.M.R. 78 (1962). *Compare* Manual, *supra*, paragraph 56*d; Petty v. Moriarty*, 20 U.S.C.M.A. 438, 43 C.M.R. 278 (1971). Government counsel contend, and I agree, that the same presumption arises in regard to similar action by the superior commander, in the exercise of his independent authority to control disposition of the charges. True, as a result of trial of the charges by a general court-martial the accused had a more severe punishment imposed upon him than could have been adjudged by the special court-martial to which the charges had been originally referred, ·but that consequential effect of the withdrawal does not itself establish that the reasons for the withdrawal were such that the action was unfair or arbitrary. *See United States v. Williams*, 11 U.S.C.M.A. 459, 29 C.M.R. 275 (1960).[1]

Finally, I disagree with the discussion and conclusion in part IV that an improper reference of a charge to a particular court-martial for trial is a jurisdictional defect. *United States v. Walsh*, 22 U.S.C.M.A. 509, 512, 47 C.M.R. 926, 929 (1973), explicitly rejected that concept; and paragraph 67*b* of the Manual provides that objections to the reference to trial must be made before plea. I believe those positions are sound, and I would adhere to them.

---

1. In *United States v. Jackson*, 24 U.S.C.M.A. 57, 51 C.M.R. 186, 1 M.J. 242 (1976), the Court noted that, while the Uniform Code and the Manual do not mandate that a statement of the reasons for withdrawal of charges from a court-martial be included in the record when the withdrawal is effected before the accused is arraigned, as distinguished from the requirement for inclusion when withdrawal is directed after the court is convened, it is "better practice" to make the reasons part of the record, contemporaneously with the withdrawal. As the decision to withdraw is subject to review for arbitrariness and unfairness, timely recording of the reasons can lessen the burden of review.