UNITED STATES, Appellee,

v.

Peter J. CHARETTE, Private U.S. Army, Appellant.

No. 35,286.

SPCM 12708.

U. S. Court of Military Appeals.

March 28, 1983.

---

For Appellant: *Colonel Robert B. Clarke, Captain Larry D. Anderson (on brief); Major Benjamin A. Sims, Major Lawrence D. Galehouse, Major Robert D. Ganstein, Major James F. Nagle, Captain Claudio F. Gnocchi.*

For Appellee: *Colonel Thomas H. Davis, Colonel R.R. Boller, Captain Richard A. Canatela, Captain Glen D. Lause (on brief);*

*Major Steven M. Werner, Captain Douglas P. Franklin.*

## Opinion of the Court

EVERETT, Chief Judge:

Appellant was tried at Fort Carson, Colorado, by a special court-martial with members on charges of conspiring to escape from custody and escape from custody, in violation of Articles 81 and 95, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 895, respectively. The sentence adjudged was a bad-conduct discharge, confinement at hard labor for 4 months, and forfeiture of $120.00 pay per month for a like period. The convening authority reduced the period of confinement and forfeitures to 2 months, but otherwise approved the findings and sentence. After the United States Army Court of Military Review affirmed, we granted review to consider whether the charges had been properly referred for trial and whether the military judge had erred in failing to instruct *sua sponte* about appellant's failure to testify prior to findings. 4 M.J. 343 (1978).

### I

Some of the facts concerning the referral of charges for trial parallel those in *United States v. Blaylock,* 15 M.J. 200 (C.M.A. 1983), which was tried at the same post. In both cases, the special court-martial convening authority initially referred the charges to a special court-martial not empowered to adjudge a bad-conduct discharge—sometimes referred to in the Army as a "regular" special court-martial.[1] Moreover, as in *Blaylock,* this appellant submitted an application for administrative discharge in lieu of trial by court-martial to the officer exercising general court-martial jurisdiction, *see* Chapter 10, Army Regulation 635–200 (December 14, 1973); and that officer denied the application and rereferred the charges to a special court-martial "empowered to adjudge a bad-conduct discharge."

Thereafter, however, the scenario differs from *Blaylock,* for at trial Charette challenged the rereferral of charges. His defense counsel contended that Major General Forrest, the officer exercising general court-martial jurisdiction, had referred the charges to a special court-martial empowered to adjudge a bad-conduct discharge as the result of appellant's request for an administrative discharge in lieu of court-martial. He complained that, by subjecting appellant to a more severe punishment because he had sought an administrative discharge, General Forrest had exercised "unlawful command influence" and had denied Charette's "right to military due process and equal protection of the law."

To support its challenge, the defense called as a witness, Captain Altieri, the Chief of Military Justice at Fort Carson. According to Altieri, in the past some cases had *not* been rereferred from "Regular Specials" to special courts-martial empowered to adjudge a bad-conduct discharge when requests for administrative discharges in lieu of court-martial were disapproved. However, it was "not uncommon" for charges to be "referred to a higher level court" under such circumstances. Defense counsel also offered evidence which reflected that the staff judge advocate had recommended to General Forrest that he grant Charette's request for discharge in lieu of trial by court-martial and had attached to this recommendation a document for signature by the General. Instead of signing that document, General Forrest merely noted thereon, "Trial by BCD SPCM Panel # 3."

After presenting this evidence, defense counsel argued that the charges should be dismissed or the special court-martial trying the case should be forbidden to adjudge a bad-conduct discharge. Trial counsel responded that the defense evidence had not proved arbitrariness by the officer exercising general court-martial jurisdiction but instead had demonstrated that General For-

---

1. The other Armed Services usually do not convene special courts-martial which are not em-

powered to adjudge a bad-conduct discharge.

rest had exercised his discretion properly. Without explanation, the military judge denied the defense motion.

## II

Under similar circumstances, we ruled in *Blaylock* that, although charges had been rereferred for trial by a court-martial which could adjudge more severe punishment, that court possessed jurisdiction over the case and the rereferral of charges had not violated Article 37 of the Code, 10 U.S.C. § 837. However, we called attention to the Manual requirement that charges not be "withdrawn arbitrarily or unfairly to the accused," *see* para. 56a, Manual for Courts-Martial, United States, 1969 (Revised edition); and we emphasized that an accused could not be subjected to harm in retaliation for his utilizing rights granted by an Army regulation. *See also United States v. Pinkney,* 22 U.S.C.M.A. 595, 48 C.M.R. 219 (1974).

█ Although earlier we had recognized that, where charges are withdrawn, "the better practice is always to make . . . a 'proper reason' a matter of record," *United States v. Jackson,* 1 M.J. 242, 243 (C.M.A. 1976), not until *United States v. Hardy,* 4 M.J. 20 (C.M.A.1977), did we require that a reason be stated for withdrawal. Moreover, that requirement was not applied retrospectively. Accordingly, since Charette's trial preceded our opinion in *Hardy,* it was not necessary that a reason for General Forrest's withdrawal of charges appear in the record. *See United States v. Blaylock, supra.* However, appellate defense counsel contend that here, unlike *Blaylock,* there is evidence in the record which establishes that the charges were withdrawn and rereferred arbitrarily and in violation of paragraph 56a of the Manual, *supra.*

█ The Government responds that we need not consider this defense argument since appellant waived his right to complain about rereferral of the charges. According to this view, Charette cannot contest action which had the effect of subjecting him to a bad-conduct discharge, for he already had requested an administrative discharge in

lieu of court-martial. Of course, the premise for this argument is that the two kinds of discharges are equivalent—a premise which is questionable. More importantly, it would appear that, in applying for an administrative discharge in lieu of court-martial, appellant anticipated that he would receive this discharge instead of being court-martialled and therefore would not be subjected to confinement and forfeitures. However, by reason of General Forrest's action, appellant ultimately received not only a separation from the Army—to which he apparently was agreeable—but also confinement and forfeitures. Willingness to accept one unpleasant consequence cannot be considered a waiver of the right to complain when subjected to that consequence *plus* other disagreeable consequences.

Since we discern no waiver by appellant, we must determine whether the record reveals arbitrary or unfair action by the officer exercising general court-martial jurisdiction. In transmitting the charges, Charette's company commander recommended that he be tried by a special court-martial empowered to adjudge a bad-conduct discharge; and the battalion commander made the same recommendation. Instead, the brigade commander referred the charges for trial by a "regular" special court-martial.

█ In recommending approval of Charette's request to be discharged administratively and the issuance to him of "an other than honorable discharge" from the service, the staff judge advocate apparently was suggesting that appellant be allowed to exit the Army swiftly by means of an administrative discharge and without a trial. His recommendation was contained in a memorandum which trial defense counsel introduced in evidence and which recited that the "[c]ommanders of Company C, 1st Battalion, 11th Infantry, Second Brigade recommend approval and issuance of an other than honorable discharge." From the record and allied papers, we can only speculate whether this recital was in error or

whether, by that time, Charette's commanders had concluded that the best course of action was to separate him from the Army as fast as possible, even if that meant that he would not be tried by court-martial.

His receipt of Charette's request for an administrative discharge alerted General Forrest to the case; and, despite the recommendation of his staff judge advocate, he decided to disapprove the request. The general gave no reason for this decision; but we are unaware of any requirement that he give reasons for such action on an administrative discharge or explain why he disagreed with his staff judge advocate.[2]

Although General Forrest was not called as a witness, we infer—as did trial defense counsel—that "[o]nly because the accused sought to exercise an administrative remedy, was this case brought to General Forrest's attention, and was the case referred to a higher level of court." However, in our view, General Forrest was free to make what he considered the most appropriate disposition of the charges regardless of whether he learned about them from a staff member, a newspaper reporter, conversation in an officer's club, or, as here, by being presented with appellant's request for an administrative discharge. The submission of a request for an administrative discharge does not provide an accused with any rights or immunities he would not otherwise possess.

Of course, if in every instance a request for an administrative discharge in lieu of court-martial resulted in rereferral of charges to a higher level of court-martial, an abuse of discretion would seem to exist. Such circumstances could demonstrate that accused persons were being punished for utilizing their administrative remedies and that the officer exercising general court-martial jurisdiction was seeking to discourage applications for administrative discharges in lieu of courts-martial. However, the testimony of Captain Altieri, the Chief of Military Justice, made clear that under

such circumstances there had been no uniform practice of rereferring charges to a higher level of court-martial.

In *Blaylock*, where no evidence was presented about the circumstances under which charges had been withdrawn from a "regular" special court-martial and rereferred to a special court-martial empowered to adjudge a bad-conduct discharge, we concluded that no showing had been made of a violation of paragraph 56a of the Manual, *supra*. While Charette did offer evidence in challenging the rereferral, we come to the same conclusion here. General Forrest's decision was consistent with the seriousness of the offenses involved and with appellant's military record and expressed willingness to be separated from the Army.

In light of subsequent developments, appellant and his counsel probably regretted the submission of the application for an administrative discharge. In that regard, their plight was like that of an attorney who, in questioning a witness, inadvertently elicits evidence which proves to be unfavorable to his client or opens the door to damaging evidence. Since, however, the unforeseen and unpleasant consequences were not shown to have resulted from any improper motive or intent on General Forrest's part, in this case—just as in *Blaylock*—no relief is required.

### III

■ Appellant now claims that the military judge committed error by not instructing the court members *sua sponte* that Charette's failure to testify should not be construed against him. However, since the defense had expressly requested that no "instructions be given that relates to the accused's right to testify or remain silent," this claim is clearly without merit. We need only repeat what we recently said in *United States v. Wray*, 9 M.J. 361, 362–63 (C.M.A.1980):

2. In at least one situation, an officer exercising general court-martial jurisdiction must explain his rejection of a recommendation by his staff

judge advocate. *See* para. 85c, Manual for Courts-Martial, United States, 1969 (Revised edition).

Indeed, in cases like the one at hand, there is no reason for adhering to the anomaly of finding error when the military judge follows the request of defense counsel in omitting an instruction on a ... matter. In view of the defense counsel's responsibilities—and assuming even minimal competency on the part of the defense counsel—his tactical choice can appropriately be honored by the military judge. This is especially true where, as here, the defense counsel's stated determination is one for which a rational basis can readily be perceived. *Cf. United States v. Rivas,* 3 M.J. 282 (C.M.A.1977) ... [T]o reverse this military judge for acceding to the defense counsel's request that he not instruct on ... [the matter]— and thereby to assure that in future cases other military judges will not accede to similar requests—would unduly disparage the role of defense counsel in criminal justice administration.

*See also United States v. Fowler,* 9 M.J. 149, 150–51 n. 3 (C.M.A.1980). Moreover, in *Lakeside v. Oregon,* 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978), the Supreme Court—while holding that a judge was not constitutionally prohibited from instructing a jury about a defendant's right to remain silent, even though defense counsel had re-quested that no instruction be given on the subject—certainly made clear that a judge would not err in acceding to such a request.

## IV

The decision of the United States Army Court of Military Review is affirmed.

Judge COOK concurs.

FLETCHER, Judge (concurring in the result):

This case also does not require us to tamper with the decision of this Court in *United States v. Hardy,* 4 M.J. 20 (C.M.A.1977). *See United States v. Blaylock,* 15 M.J. 190, 196 (C.M.A.1983) (Fletcher, J., concurring in the result). Here, the subordinate convening authority was not coerced nor did he even withdraw these charges from the level of special court-martial jurisdiction. Moreover, both convening authorities referred these charges to the same level of court-martial jurisdiction. Article 19, Uniform Code of Military Justice, 10 U.S.C. § 819. As to the claim that the superior convening authority abused his discretion by his referral action, I do not believe appellant has met his burden of proof on this matter. *See United States v. Villines,* 13 M.J. 46, 55 (C.M.A.1982).