UNITED STATES

v.

**Ronald D. JONES, Staff Sergeant (E–6), U.S. Marine Corps.**

NMCCA 200401276.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Decided 16 Feb. 2005.

LtCol Joseph R. Perlak, USMC, Appellate Defense Counsel.

Lt Colin Kisor, JAGC, USNR, Appellate Defense Counsel.

CDR Charles N. Purnell, JAGC, USN, Appellate Government Counsel.

Lt Kathleen Helmann, JAGC, USNR, Appellate Government Counsel.

Before CARVER, Senior Judge, WAGNER, and REDCLIFF, Appellate Military Judges.

WAGNER, Judge:

This case is before us on Government appeal of the military judge's ruling to dismiss without prejudice the charged offenses for improper referral of charges. The appeal is properly brought before this court under Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862. After a thorough review of the entire record of trial and the briefs submitted by the Government and the appellee, we find that the military judge erred in dismissing the charged offenses on the basis of improper referral.

### Facts

The appellee, a Marine staff sergeant, was assigned as a senior enlisted instructor for the midshipmen at the United States Naval Academy. As a result of an investigation into an alleged improper relationship between the appellee and a female midshipman during the period of June 2001 to May 2002, the appellee was relieved from his duties at the Naval Academy in August of 2002 and reassigned to his administrative unit, Marine Barracks, Washington, D.C. Shortly thereafter, he executed permanent change of station orders to Headquarters and Service Battalion (H & SBn), Marine Corps Base (MCB), Quantico, VA. A report of investigation was forwarded to H & SBn by the Naval Academy.

Following review of the report of investigation, the Commanding Officer, H & SBn, the appellee's immediate commander and a special court-martial convening authority (SPCMCA), determined that the adverse administrative actions taken were sufficient and did not initiate any disciplinary action. Thereafter, the Commanding General, MCB, Quantico, his next senior commander and a general court-martial convening authority (GCMCA), assumed authority over the disposition of the report of investigation and, on 26

March 2003, referred charges against the appellee to a special court-martial (SPCM) convened by him. The charges included fraternization in violation of Article 1165, U.S. Navy Regulations (1990), assault, drunk and disorderly, indecent language, and solicitation to commit an offense.

At a post-arraignment Article 39(a) session on 23 June 2003, the military judge granted a defense motion to dismiss the fraternization offenses for failure to state an offense because midshipmen do not qualify as either officers or enlisted persons for purposes of fraternization under U.S. Navy Regulations. There is no record of these proceedings, nor is there any written documentation that the offenses were ever withdrawn and dismissed or whether they were dismissed with or without prejudice.

Following a routine change of command at MCB Quantico, Commander, MCB, Quantico became the successor in command and was also designated a GCMCA. The staff judge advocate (SJA) for the Superintendent of the Naval Academy began an aggressive campaign to convince the Commander, MCB, Quantico, to re-refer the charges to another court-martial, including charges of forcible sodomy and indecent assault based on the appellee's superior/subordinate status as a senior enlisted advisor vis-à-vis the female midshipman. During the course of this campaign, the SJA for the Superintendent not only spoke several times with the legal staff for the Commander, MCB, Quantico, he took the highly unusual step of speaking directly to the Commander himself. The SJA for the Superintendent expressed his belief that the Commander, MCB, Quantico, had not been adequately briefed on the facts of the case by his own SJA, that the Marine commanders did not understand the relationship of a midshipman to a senior enlisted advisor, and that the Marine Corps in general had "dropped the ball" in this case. Record at 256.

The Commander, MCB, Quantico, directed additional investigation into the original incidents, including a re-interview of the midshipman. After a review of all the evidence, the Commander, MCB, Quantico, concurred with the recommendation of his SJA not to refer charges to another court-martial. In particular, the Commander, MCB, Quantico, found no evidence that the alleged sexual activity was not consensual and no basis to charge the appellee with either forcible sodomy or indecent assault. The Commander, MCB, Quantico, told the SJA for the Superintendent that he would make the appellee available for trial in the event the Superintendent, a GCMCA, convened a court-martial and referred charges against the appellee.

On 12 March 2004, the Superintendent of the Naval Academy did, in fact, convene a special court-martial and refer charges involving sexual harassment, fraternization in violation of Chief of Naval Operations Instruction 5370.2B (27 May 99), dereliction of duty, forcible sodomy, indecent assault, and drunk and disorderly conduct. These charges arose from the same incidents that occurred when the appellee was assigned to the Naval Academy.

At a post-arraignment Article 39(a) session on 29 June 2004, during his second court-martial, the appellee moved for dismissal of all charges and specifications on the basis of unlawful command influence, lack of subject matter jurisdiction, and improper referral. Extensive testimony, evidence, and argument were presented regarding the propriety of the actions of the SJA for the Superintendent in his attempts to influence the Commander, MCB, Quantico, to refer charges anew. With respect to the disposition of the earlier charges, the trial counsel from the first court-martial testified that he recalled discussing options with the convening authority's military justice officer and then withdrawing and dismissing the offenses on the record.

The intent of the convening authority to withdraw and dismiss the original charges is further supported by Appellate Exhibit VII, a memorandum dated 8 October 2003 to Commander, MCB, Quantico, from his SJA, recommending a decision terminating disciplinary action against the appellee. That memorandum indicates that the remaining charges were withdrawn and re-drafted at some unspecified time and that the SJA for the Superintendent of the Naval Academy had requested that the redrafted charges be re-preferred. The Commander, MCB, Quan-

tico, terminated further action on those charges by approving his SJA's recommendation. The military judge, however, in a written order dated 26 August 2004, dismissed without prejudice the offenses on the sole basis of improper referral. Appellate Exhibit XVII.

The Government now appeals the order of the trial court dismissing the offenses and asks this court to reverse the trial judge's decision. We are limited by Article 62, UCMJ, 10 U.S.C. § 862, to review only those issues raised by the government on appeal.

## Issues

The Government claims two bases for error in the military judge's dismissal of the charges. First, the Government asserts that the military judge erred by finding that an obvious disagreement existed between the two convening authorities as to the disposition of the case that required resolution by a superior competent authority. Second, the Government contends that the military judge erred by finding that the second referral was more onerous to the appellee than the first and, therefore, that the reasons for the prior withdrawal and subsequent re-referral must be provided in the record of the subsequent court-martial.

## Standard of Review

The standard of review in this case is abuse of discretion. *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F.2004); *United States v. Hatfield*, 43 M.J. 662, 664 (N.M.Ct. Crim.App.1995), *rev'd on other grounds*, 44 M.J. 22 (C.A.A.F.1996). Review by this court is limited to matters of law and we are required to defer to the findings of fact of the trial judge so long as they are " 'fairly supported by the record'...." *Gore*, 60 M.J. at 185 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983)). The Government, as appellant, carries the burden of persuasion that the military judge abused his discretion. *United States v. Houser*, 36 M.J. 392, 397 (C.M.A.1993); *Hatfield*, 43 M.J. at 664. This court may not substitute its judgment for that of the trial judge. *United States v. Burris*, 21 M.J. 140, 144 (C.M.A.1985).

## Disagreement Between Convening Authorities

The military judge incorrectly found as a fact that there was an obvious dispute between the two commanders. There is no support in the record for this finding and we disapprove it. He also incorrectly concluded as a matter of law that the referral of charges by the Superintendent of the Naval Academy was improper because RULES FOR COURTS-MARTIAL 306 and 401, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.) required the Superintendent to petition competent superior authority to resolve the alleged dispute between the commanders.

■ A command other than the one to which the accused is attached may refer charges against the accused to a court-martial. Properly convened courts-martial may try any person subject to the UCMJ. Article 2, UCMJ, 10 U.S.C. § 802; R.C.M. 202. The President has stated that "Any convening authority may refer charges to a court-martial convened by that convening authority...." R.C.M. 601(b). Included in the Discussion section under R.C.M. 601(b) is the statement that "[t]he convening authority may be of any command, including a command different from the accused...." The Service Courts have uniformly upheld such personal jurisdiction within each service that transcends command boundaries. *United States v. Talty*, 17 M.J. 1127, 1130 (N.M.C.M.R.1984); *United States v. Kloese*, 24 M.J. 783, 785 (A.C.M.R.1987).

There is no indication in either the Manual for Courts–Martial or in case law that one convening authority will have precedence over another in the unusual situation where more than one convening authority refers charges. In that event, the command to which the accused is attached or a superior in the chain of command has, as a practical matter, control over which convening authority will ultimately complete the court-martial by virtue of the power to provide or withhold orders for the accused to appear. This conclusion is suggested by the drafters in the Discussion section of R.C.M. 601(b), which states that, "as a practical matter the accused must be subject to the orders of the convening authority or otherwise under the

convening authority's control to assure the appearance of the accused at trial."

The drafters of the Manual further state that the convening authority's control over the accused may be based on an agreement between the commanders involved. *Id.* In the event that a convening authority who is frustrated by not having control over the accused is dissatisfied with the manner in which the case is handled, that commander may elevate the matter to the first common superior to both commands, who should resolve the disagreement between the subordinate commanders. *See* R.C.M. 401(a); R.C.M. 601(f); *see also United States v. Blaylock,* 15 M.J. 190, 193–94 (C.M.A.1983).

Assuming arguendo that a requirement to petition higher authority exists in law, here there was no disagreement between the Superintendent of the Naval Academy and the Commander, MCB, Quantico, regarding resolution of this case. The Commander, MCB, Quantico, reviewed the report of investigation and used his independent judgment not to re-refer the charges following their withdrawal from the original court-martial. The Superintendent, in like fashion, reviewed the same report of investigation and used his independent judgment to refer charges to his own properly convened court-martial. The disagreement, had there been one, would have come as a result of the Commander, MCB, Quantico, refusing to make the appellee available for trial, as the appellee was not then subject to the orders of the Superintendent. R.C.M. 601(b).

Here, the commanders had an agreement that the accused would be made available for trial in the event the charges were referred to trial by the Superintendent. Had the Commander, MCB, Quantico, refused to make the accused available (and this court can find no requirement that he was obligated to do so), the Superintendent's only recourse would have been to seek the intervention of the next superior in command common to both, the Secretary of the Navy.

### Improper Re-referral of Charges

■ The military judge also found that the re-referral of the offenses was improper because the later referral was more onerous and, therefore, R.C.M 604(b) required that the reasons for the withdrawal and re-referral of charges be included in the record.

Appellate Exhibit XVII. "When charges which have been withdrawn from a court-martial are referred to another court-martial, the reasons for the withdrawal and later referral should be included in the record of the later court-martial, if the later referral is more onerous to the accused." R.C.M. 604(b), Discussion. The military judge found the addition of offenses involving forcible sodomy to be more onerous than the original set of charges facing the accused. Appellate Exhibit XVII.

Our superior court established that the language the military judge relied on in dismissing the offenses creates a requirement that can, standing alone, act as a bar to proper subsequent referral. "Therefore, we will require, for all trials beginning on or after the effective date of this decision, an affirmative showing on the record of the reason for withdrawal and rereferral of any specification." *United States v. Hardy,* 4 M.J. 20, 25 (C.M.A.1977). While later decisions of that court have questioned the "pedigree" of the decision in *Hardy,* it remains binding precedent on this court. *United States v. Koke,* 34 M.J. 313, 314 n. 2 (C.M.A. 1992). Interestingly, the language in *Hardy* does not expressly limit its application to charges where the subsequent referral is more onerous to the accused, but read in context with the Discussion to R.C.M. 604(b) and related cases, such a limitation would appear to be implied.

In conducting his analysis, the military judge skipped a foundational step, determining whether, in fact, the charges referred by the Superintendent were the same charges previously referred for trial by the Commanding General, MCB, Quantico.

The following offenses were referred for trial by the Commanding General, MCB, Quantico, on 26 March 2003:

Charge I, Specification 1, Article 92, Violation of U.S. Navy Regulation 1165 (frater-

nization with (Midshipman Third Class) MIDN 3/C "T");

Charge I, Specification 2, Article 92, Violation of U.S. Navy Regulation 1165 (fraternization with MIDN 3/C "G");

Charge II, Specification, Article 128, Assault Consummated by Battery (touched shoulder of Second Lieutenant (2ndLt) "R");

Charge III, Specification 1, Article 134, Drunk and Disorderly on 21 June 2001;

Charge III, Specification 2, Article 134, Drunk and Disorderly on 26 April 2002;

Charge III, Specification 3, Article 134, Indecent Language toward 2ndLt "R"; and,

Charge III, Specification 4, Article 134, Solicit 2ndLt "S" to commit an offense.

Enclosure 2 of Appellate Exhibit II.

The Superintendent of the Naval Academy referred the following offenses on 12 March 2004 for trial:

Charge I, Specification 1, Article 92, Violation of SECNAVINST 5300.26C (verbal sexual harassment of then Midshipman First Class (MIDN 1/C) "R");

Charge I, Specification 2, Article 92, Violation of SECNAVINST 5300.26C (verbal and physical sexual harassment of then-Midshipman Fourth Class (MIDN 4/C) "T");

Charge I, Specification 3, Article 92, Violation of OPNAVINST5370.2B (fraternization with then-MIDN 4/C "T");

Charge I, Specification 4, Article 134, Dereliction of Duty (fraternization with then-MIDN 4/C "T");

Charge II, Specification 1, Article 125, Forcible Sodomy with then-MIDN 4/C "T" on 17 November 2001;

Charge II, Specification 2, Article 125, Forcible Sodomy with then-MIDN 4/C "T" on 23 November 2001;

Charge III, Specification 1, Article 134, Indecent Assault on then-MIDN 4/C "T" on 17 November 2001;

Charge III, Specification 2, Article 134, Indecent Assault on then-MIDN 4/C "T" on 23 November 2001; and,

Charge III, Specification 3, Article 134, Drunk and Disorderly on April to May 2002.

Charge Sheets; Record at 15.

The original set of charges included the two violations of Navy Regulations on fraternization that were dismissed without prejudice by the military judge in the first court-martial for failure to state an offense. One of these charges was re-referred as a violation of the OPNAVINST governing fraternization. This is a proper re-referral because the re-referral is not more onerous than the original referral and, in any event, reasons for the dismissal, failure to state an offense, are a matter of record at the second court-martial. Dismissal of a specification for failure to state an offense does not ordinarily bar re-referral of the offense if the grounds for the dismissal no longer exist. R.C.M. 907(a), Discussion.

The two specifications of forcible sodomy, two specifications of sexual harassment, and two specifications of indecent assault referred for trial by the Superintendent of the Naval Academy were not previously referred to a court-martial. As the testimony and evidence on the motion in the second court-martial attest, the original convening authority did not consider the evidence sufficient to refer charges of forcible sodomy or indecent assault. This is based on the convening authority's determination that the evidence supported only consensual sexual activity. Because these charges were never referred to trial by the original convening authority, the Superintendent of the Naval Academy was free to refer them to court-martial without explanation under R.C.M. 601(b), and R.C.M. 604(b) does not bar that referral.

The only remaining offense, drunk and disorderly conduct, was referred to trial by the original convening authority and subsequently withdrawn prior to October of 2003. The re-referral of this specification is not more onerous than the original referral, as it was referred on both occasions to a special

court-martial. Therefore, the requirement in R.C.M. 604(b) that the reasons for the withdrawal and re-referral be made a matter of record does not apply to this specification.

### Decision

The Government appeal is granted. The record of trial is returned to the Judge Advocate General for remand to the convening authority for appropriate disposition, including trial.

Senior Judge CARVER and Judge REDCLIFF concur.